### HANDLEY–MACK CO. v. GODCHAUX SUGAR CO.

(Circuit Court of Appeals, Sixth Circuit. November 14, 1924.)

No. 4037.

**1. Removal of causes ⬥═45—Cause not removable by resident defendant on the ground of diversity of citizenship.**

Under Judicial Code, § 28 (Comp. St. § 1010), a cause is not removable on the ground of diversity of citizenship by a resident defendant.

**2. Courts ⬥═23, 39 — Jurisdiction cannot be conferred on a federal court by consent.**

Consent of parties cannot confer jurisdiction on a federal court, and if the record in that court does not show jurisdiction, it is the duty of the court of its own motion to refuse to exercise it.

**3. Removal of causes ⬥═106—Where federal court has jurisdiction of subject-matter, irregularity of removal may be waived.**

Where a federal court would have had jurisdiction of a cause, if brought in that court, and the parties have fully consented to its jurisdiction after removal, and acted thereon, it may retain it, though the cause was removed by a resident defendant, who was without right of removal under the statute.

**4. Contracts ⬥═10(4)—Contract held not invalid for want of mutuality.**

A contract for sale of granulated sugar by a refiner *held* not invalid for want of mutuality, because of a provision, "Sellers will not be responsible for delivery of granulated. unless raws received," there being an implied obligation on the part of the seller to use reasonable effort to obtain the raws.

**5. Sales ⬥═48—Provisions of Lever Act held not applicable to contract for sale of sugar.**

Lever Act Aug. 10, 1917, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛g), relates only to licenses to import, manufacture, or distribute necessaries, and section 25 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛q), is limited to the production and sale of coal and coke, and neither has any application to a contract for the sale of sugar.

**6. Sales ⬥═48¾, New, vol. 16A Key-No. Series—Section 4 of Lever Act held void as applied to contract for sale of sugar.**

The provision of Lever Act Aug. 10, 1917, § 4 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ff), making it unlawful for any person to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries, *held* void, and ineffective to render invalid a contract for the sale of sugar.

In Error to the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

Action at law by the Godchaux Sugar Company against the Handley-Mack Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Charles C. Moore, of Chattanooga, Tenn., for plaintiff in error.

J. B. Milligan, of Chattanooga, Tenn. (Milling, Godchaux, Saal & Milling and R. C. Milling, all of New Orleans, La., on the brief), for defendant in error.

Before DENISON, MACK, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. Defendant in error (hereinafter called plaintiff) is a New York corporation, doing business at New Orleans, La., and engaged in the manufacture, refining and sale of sugar. Plaintiff in error (hereinafter called defendant) is a Tennessee corporation, engaged in the wholesale grocery business at Chattanooga. Plaintiff brought this suit claiming damages of more than $9,000, for the breach of a contract made April 23, 1920, for the sale by plaintiff to defendant of 600 barrels of granulated sugar at 25 cents per pound, 200 barrels to be shipped each month during July, August, and September. The July and August shipments were made, accepted and paid for. The September shipments were made, but defendant refused to accept them. There was trial to a jury, and plaintiff had verdict and judgment for $6,000.

Defendant contends here that the contract of sale was void (a) for lack of mutuality; and (b) because contravening the Lever Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛e et seq.); and that error was committed in refusing to require plaintiff on the trial to elect between certain counts of the declaration.

[1] At the threshold we meet a question of jurisdiction of the District Court. The suit was begun in a state court of Tennessee, and was removed by defendant to the District Court, the right to remove being predicated upon diversity of citizenship and the fact that the suit involved more than $3,000.

Section 28 of the Judicial Code (Comp. St. § 1010)—applicable here—authorizes removal in such case by a nonresident defendant. Act Aug. 13, 1888, 25 Stat. 434, c. 866, § 2. Defendant, being a resident of Tennessee, was not entitled to remove. Martin v. Snyder, 148 U. S. 663, 664, 13 S. Ct. 706, 37 L. Ed. 602; Martin v. Baltimore & Ohio R. Co., 151 U. S. 673, 677,

14 S. Ct. 533, 38 L. Ed. 311; Patch v. Wabash R. Co., 207 U. S. 277, 283, 28 S. Ct. 80, 52 L. Ed. 204, 12 Ann. Cas. 518. No remand, however, was made or asked for. When the case, which had been begun in equity (as under the Tennessee practice was proper), came into the District Court, it was, by order of that court, duly transferred to the law side, and plaintiff directed to amend its pleadings by filing a declaration conforming to the practice at law, which was done and issues joined accordingly. The case duly proceeded to trial and judgment.

[2] Defendant's brief in this court states that it "now desires expressly to waive any question as to the jurisdiction of the court." Plaintiff naturally defends the jurisdiction. Consent of parties can not confer jurisdiction upon the federal court; if the record in that court does not show jurisdiction it is the court's duty, of its own motion, to refuse to exercise it.[1]

[3] Under the second section of the Removal Act of 1875 (18 Stat. 470, c. 137 [Comp. St. § 1010]), either plaintiff or defendant could remove, and it was held thereunder that "diverse state citizenship of the parties, or some other jurisdictional fact prescribed by the second section, is absolutely essential, and cannot be waived, and the want of it will be error at any stage of the cause, even though assigned by the party at whose instance it was committed." The second section, which, as already said, contained no limitation as to nonresidence of the moving party was said to be "jurisdictional." Ayers v. Watson, supra; Martin v. Baltimore & Ohio R. Co., supra. And see Chicago, Burlington & Quincy R. Co. v. Willard, supra; Removal Act of 1887–88, 24 Stat. 552, 25 Stat. 433.

Formal and procedural matters under section 3 of the Removal Acts, both of 1875 and 1888, such as those relating to petition, bond, and notice on removal, and matters of venue and personal privilege under other sections, are held waivable. Pacific Removal Cases, 115 U. S. 2, 17, 5 S. Ct. 1113, 29 L. Ed. 319; Powers v. Chesapeake & Ohio R. Co., 169 U. S. at page 98, 18 S. Ct. 264, 42 L. Ed. 673; Ayers v. Watson, supra; General Investment Co. v. L. S. & M. S. R. Co., 260 U. S. 261, 274, 43 S. Ct. 106, 67 L. Ed. 244; Lee v. Chesapeake & Ohio R.

Co., 260 U. S. 653, 654, 43 S. Ct. 230, 67 L. Ed. 443.

By article 3, section 2, of the Constitution, the federal courts are expressly given jurisdiction over controversies "between citizens of different states"; and by statute (Judicial Code, § 24 [Comp. St. § 991]) the District Courts are given jurisdiction of suits of a civil nature "between citizens of different states" when the cause of action involves more than $3,000. By neither Constitution nor statute is the original jurisdiction of the federal courts (dependent on diversity of citizenship and amount in controversy) limited to cases in which the defendant is a nonresident of the state in which the suit is pending. It is only the removal clause in question which confines to a nonresident defendant the authority given. While in Martin v. Snyder, supra, where the decree of the Circuit Court was reversed "for want of jurisdiction" and remand to the state court directed, there was diversity of citizenship (amount in controversy does not affirmatively appear from the reported case; and see Torrence v. Shedd, 144 U. S. 527, 533, 12 S. Ct. 726, 36 L. Ed. 528), it does not appear that any question of attempted waiver, agreement or joint action of parties was presented (nor does such question of waiver, etc., seem to have been presented in Juillard v. Barr [C. C. A. 2] 177 F. 921, 101 C. C. A. 201); and in the majority of similar cases where remand has been made diverse citizenship and jurisdictional amount in dispute—one or both—fail to appear from the reported case (Railway Co. v. Swan, supra; Graves v. Corbin, 132 U. S. 571, 590, 10 S. Ct. 196, 33 L. Ed. 462; Patch v. Wabash R. Co., supra; Chicago, Burlington & Quincy R. Co. v. Willard, supra).

The subject-matter of the instant suit was thus within the original jurisdiction of the District Court. Defendant's counsel says he had at the time doubt of defendant's right to remove, and that plaintiff's counsel thought the right existed. The latter says that on receipt of the notice of removal he suggested to opposing counsel that defendant was not entitled to remove; but that he would not oppose removal because he had been in doubt (presumably when commencing suit) as to the choice of forum. Plaintiff could have brought its suit originally in the District Court below. Had the legality of the removal been questioned, plaintiff could, and presumably would, have discontinued the suit then pending in the federal

[1] Railway Co. v. Swan, 111 U. S. 379, 381, 4 S. Ct. 510, 28 L. Ed. 462; Ayers v. Watson, 113 U. S. 594, 598, 5 S. Ct. 641, 28 L. Ed. 1093; Chicago, Burlington & Quincy R. Co. v. Willard, 220 U. S. 413, 31 S. Ct. 460, 55 L. Ed. 521.

court and have sued again, and—if desired —in the same District Court, which would thereby have acquired unquestioned jurisdiction. If not barred by limitation, it could presumably still sue in the court below. Plaintiff's submission to defendant's removal proceeding and the reforming of its pleadings to meet the situation was, in a not improper sense, a short cut to the same result. Save so far as implied in the direction in Martin v. Snyder, to remand a case "reversed for want of jurisdiction," we find no holding of the Supreme Court that a removal by a nonresident defendant—first provided for by the act of 1887–88 (and since Railway Co. v. Swan and Ayers v. Watson)—is vital to the jurisdiction of the District Court to hear the case, in the sense that the court has no discretion but to remand it, in spite of original jurisdiction to hear it and long-continued acquiescence by the parties, as well as the court's trial and decision thereunder.

It may be noted that section 2 of the Removal Act of 1875 (which has been spoken of as "jurisdictional") in terms provided for removal in every class of cases (except criminal) in which original jurisdiction had already been conferred by section 1; also that the provisions of present section 51 of the Judicial Code forbidding the bringing of civil suit in any district other than that of which defendant is an inhabitant, was, when enacted, a part of the original jurisdictional section 1 of the Removal Acts of both 1875 and 1888, and that even before the enactment of the Judicial Code in 1911 (36 Stat. 1087, 1101 [Comp. St. § 1033]), this requirement was held waivable. Gracie v. Palmer, 8 Wheat. 899, 5 L. Ed. 719.

Whether or not in the early removal cases under the statutes of 1875 and 1887–88 the term "jurisdiction" was used less strictly than it latterly has been, there is persuasive authority tending to support a view that jurisdiction will be retained where, as here, although the case was not technically removable under the statute, the court yet had jurisdiction over the subject-matter of the controversy, and the parties had fully consented to the federal jurisdiction and acted thereunder. Baggs v. Martin, 179 U. S. 206, 21 S. Ct. 109, 45 L. Ed. 155; Guarantee Co. v. Mechanics Co. (C. C. A. 6) 80 F. 766, 771, 26 C. C. A. 146, certiorari denied 169 U. S. 736, 18 S. Ct. 950; Rupp v. Wheeling & Lake Erie R. Co. (C. C. A. 6) 121 F. 825, 58 C. C. A. 161 (see reference at page 826, 58 C. C. A. 162, to Baggs v. Martin); Philadelphia, etc., Co. v. War-

ford (C. C.) 123 F. 843; In re Moore, 209 U. S. 490, 28 S. Ct. 585, 52 L. Ed. 904, 14 Ann. Cas. 1164; Toledo, St. Louis & Western R. Co. v. Perenchio (C. C. A. 7) 205 F. 472, 123 C. C. A. 540; certiorari denied 231 U. S. 745, 34 S. Ct. 319, 58 L. Ed. 464. Cf. Gregory v. Pike (C. C. A. 1) 67 F. at page 847, 15 C. C. A. 33; Moon on Removal, § 204, p. 637.[2]

In Baggs v. Martin, supra, it was held that a receiver who had erroneously removed a suit (brought against him in a state court) into the federal court, on the ground that it was ancillary to the suit in which he was appointed receiver, could not, after that court had passed upon the matter in controversy, be heard to object to the power of that court to render judgment therein. See Judge Baker's discussion (in the Perenchio Case, supra) of Baggs v. Martin and of In re Moore, as well as of the question generally. Judge Baker reaches the conclusion that, "within its limitations respecting subject-matter, a federal court is a court of general jurisdiction. If organic power to hear the controversy exists, it is immaterial when or how the parties get into court; it is enough if they do come in and waive all preliminaries to the submission of their controversy." 205 F. at page 476, 123 C. C. A. 544.

In Guarantee Co. v. Mechanics' Co., supra, one of several defendants sued on a joint and several obligation removed the case on the ground of separable controversy. Unless such controversy existed, the federal court would be without jurisdiction for lack of diversity of citizenship. This court held that, as the case was planted, there was no separate controversy, but as the Circuit Court had constitutional jurisdiction over the controversy between the two parties, as raised by the removing defendant, the plaintiff, by proceeding to trial without protest, and taking judgment against the remaining defendants, had consented to a severance of the joint action into two several actions. See Judge Putnam's comment in the Warford Case, supra.

We think it is not our duty, upon the

---

[2] Moon says: "If a suit is one of which the Circuit Court may take jurisdiction by the plaintiff's consent—a case which the plaintiff might bring in the Circuit Court—and the defendant procures its removal from a state court, although such removal is wholly unauthorized, and the plaintiff acquiesces in such removal, the Circuit Court will acquire jurisdiction, and the defendant will not be heard to complain, at any subsequent stage of the case, because such jurisdiction was acquired, by his own procurement, in an unauthorized manner."

situation here presented, to remand the case upon our own motion and against the wishes of both parties.

[4] 2. *Mutuality.* The contract of sale contains a notation that "sellers will not be responsible for delivery granulated unless raws received." Defendant urges that plaintiff did not expressly obligate itself to receive "raws," and that there was thus no mutuality of obligation. The presiding judge was of opinion that the law implied an obligation on the part of the seller "to use reasonable diligence to obtain the 'raws' in order to comply with its agreement to sell the granulated sugar, which would have made it responsible on its part for failure to deliver the granulated sugar, if it had not exercised such diligence in the effort to obtain the necessary raw sugar."

We think this conclusion sustained by the record. It does not appear that plaintiff was a grower of sugar. The inferences from the record and briefs are to the contrary. It would thus be obliged to look to others for the raws to be refined, and the lack of prejudice from overruling demurrer would appear from correspondence set up by defendant in certain counts of the declaration, including plaintiff's letter to defendant of July 26, 1920, advising it of the receipt of all the raws purchased when the contract was made and that the sugar would go forward promptly according to contract, as well as defendant's letter in confirmation of the contract, with certain modifications accepted by defendant, and apparently before the August and September shipments were made. We see no merit in the proposition of lack of mutuality.

3. *The Lever Act.* Defendant pleaded that the raw sugar for the manufacture of the refined sugar contracted to be sold to defendant had been purchased by plaintiff before entering into the contract sued on at a price of 18 cents per pound, and "that the usual, customary, and reasonable differential between the cost of raw sugar and the market price of refined sugar at that time was not more than 3 cents per pound, and * * * that in making the contract sued on * * * plaintiff exacted a differential of 7 cents per pound, and thereby made an unjust and unreasonable rate and charge in handling and dealing in sugar, a necessary food product, in violation of" the Lever Act, and in violation of the executive orders made in execution thereof, and that said contract is for that reason "unlawful and void," and plaintiff barred from maintaining suit.

The plea was demurred to on the grounds (1) that the Lever Act is unconstitutional and void; (2) that the executive orders whose violation is charged are necessarily void because based upon an unconstitutional statute; and (3) that the allegation that the contract violates the executive orders is a mere conclusion, without sufficient averment of facts to identify the orders relied upon. The demurrer was sustained on the authority of United States v. Cohen Grocery Co., 255 U. S. 81, 41 S. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045, and Standard C. & M. Corporation v. Waugh C. Corporation, 231 N. Y. 51, 131 N. E. 566, 14 A. L. R. 1054.

[5] In this court defendant invokes not only section 4 of the Lever Act (Act Aug. 10, 1917, c. 53, § 4, 40 Stat. 276; Act Oct. 22, 1919, c. 80, 41 Stat. 297; Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ff et seq.; Comp. St. Ann. Supp. 1923, § 3115⅛ff), but also sections 5 and 25 of the act (Comp. St. Ann. Supp. 1923, §§ 3115⅛g, 3115⅛q), as basis for the executive orders here relied upon. We think, however, that section 5 must be construed as relating only to licenses to import, manufacture, or distribute necessaries, and there is no allegation in the plea of a violation by plaintiff of that section. This being so, it is not material that, as defendant asserts in brief, executive order No. 1393, published September 7, 1917, required importers, manufacturers, and refiners of sugar to comply with the rules and regulations prescribed for such business. We also think that section 25 is limited to the production and sale of coal and coke, and the fixing of prices of the same. While there are some paragraphs which, standing alone, might have some tendency to indicate a more general application, we think them not sufficient to change the otherwise natural construction. It is perhaps not entirely without significance that sections 5 and 25 are so construed in certain annotated publications, as indicated by headlines thereto.[3]

[6] We think, therefore, that section 4 is the only section of the act applicable to the present situation. We also think the learned district judge correctly held that section void as applied to the instant case.[4] In United States v. Cohen Grocery Co., su-

---

[3] Fed. Stat. Ann. 1918 Supp. pp. 183, 191; U. S. Comp. Stat. 1919 Supp. pp. 660, 687.

[4] Section 4, so far as applicable here, makes it "unlawful for any person * * * to * * * make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries."

pra, this section was held void as forbidding and penalizing the exaction of an excessive price upon the sale of a commodity while providing no ascertainable standard of guilt. While the Cohen Case was a criminal prosecution, the invalidity of the section was based upon the information clause of the Sixth Amendment to the Constitution, as well as upon the due process clause of the Fifth. We think the basis of that decision, so far as the Fifth Amendment is concerned, is equally applicable to a civil case where, as here, the statute is invoked to destroy valuable property rights. Such is the conclusion reached by the Court of Appeals of the state of New York, above cited. It is true that section 4, as originally enacted, provided no penalty; but the amendment of 1919, which was in force when the contract here involved was made, attempted to make the violation of the section a felony. Whether or not defendant seeks to rely on the 1919 amendment is unimportant. We are bound to take notice of it.

Nor do we think the clause in section 1, authorizing the President to "make such regulations, and to issue such orders, as are essential effectively to carry out the provisions of this act" amounts to a delegation of authority to fix the prices of all articles which the statute classifies as necessaries, assuming, for the purposes at least of this opinion, that the explicit declaration of such authorization under a constitutional statute would be valid." [5]

If section 4 is unconstitutional, we think, to say the least, that the quoted clause of section 1 is ineffectual to save the situation. We may add that, regardless of the validity of section 4 and the executive orders, it is at least questionable whether the plea is supported by the order mentioned in defendant's brief as No. 2765, which, as there stated, declared and "fixed the reasonable and fair profit as the normal average profit which persons engaged in the same business and place obtained prior to July 1, 1914, under free competitive conditions." It does not even appear whether the "normal average profit" of the executive order invoked by the plea means profit in cents as distinguished from a percentage of profit; nor whether the "usual, customary, and reasonable differential" of the plea is the differential prevailing before July 1, 1914.

4. *The Election.* The declaration contains three counts. Defendant construes the first as seeking to recover for the difference between the contract price and the market price, and the second and third as demanding the difference between the purchase price and the amount realized on resale. Each of the three counts is based upon defendant's refusal to accept the sugar. The question is merely one of measure of damages. The first count does not state the measure asked. After alleging the contract, plaintiff's performance and defendant's breach, it avers plaintiff's loss and damage as amounting to a fixed sum, with interest from a certain date. The second and third counts are alike in all respects important here, and demand precisely the same amount of damages as the first, based in terms upon the difference between the contract price and the amount realized on resale, "at the highest price obtainable, being the market price on the days of sale." Not only would the resale price be some evidence of the market price, but the declaration asserts their equivalency. Neither the evidence nor the charge of the court are brought up in the record. We find no error in denying the motion to elect.

For the reasons stated, the judgment of the District Court is affirmed.

[5] See Ford v. United States, C. C. A. 6, 281 F. 298, 303, 304; Id., 264 U. S. 239, 44 S. Ct. 300, 68 L. Ed. 658.