**Richard J. WOODWARD, Ned P. Clyde, James I. Sherard, Raymond Lundgren, Douglas C. Moorhouse, and David M. Greer, doing business as Woodward-Clyde-Sherard & Associates, a partnership, Plaintiffs-Appellees,**

**v.**

**D. H. OVERMYER CO., Inc., a New York corporation, D. H. Overmyer Co., Inc., an Ohio corporation, Defendants-Appellants.**

Nos. 800, 801 and 802, Dockets 34606, 34748 and 34749.

United States Court of Appeals, Second Circuit.

Argued May 11, 1970.

Decided June 9, 1970.

James H. Reidy, New York City, (Gerard L. Goettel, New York City, of counsel), for defendants-appellants.

William D. Powers, New York City (Leslie A. Hynes, New York City, of counsel), for plaintiffs-appellees.

Before FRIENDLY and KAUFMAN, Circuit Judges and BRYAN,* District Judge.

FRIENDLY, Circuit Judge.

This action by six partners of Woodward-Clyde-Sherard & Associates (sometimes hereafter "the Woodward partners") to foreclose a second mortgage on property in Albany County, N.Y., executed by D. H. Overmyer Co., Inc., a New York corporation (Overmyer N.Y.), in order to secure notes signed by D. H. Overmeyer Co., Inc., an Ohio corporation (Overmyer Ohio), and for a deficiency judgment, has given rise to a number of procedural problems.

The most important is whether the action is properly in federal court at

---

* Of the Southern District of New York, sitting by designation.

all. The complaint was filed in the Supreme Court of New York for Albany County, and Overmyer Ohio and Overmyer New York petitioned for removal. The petition alleged that "none of the individual parties plaintiff is a citizen of the State of New York or the State of Ohio but are all citizens of the State of California or of the State of New Jersey"; that Overmyer Ohio is an Ohio corporation with its principal place of business in New York; and that Overmyer New York is a New York corporation with its principal place of business in that state. The petition was bad under the second sentence of 28 U.S.C. § 1441(b), providing that an action not founded on the existence of a federal question "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." While the action should therefore have been remanded if the plaintiffs had moved for such relief,[1] no suggestion on this score was made until the Overmyer corporations brought the point to our attention. Nevertheless under the "strong" rule that federal jurisdiction may be challenged at any stage, even by the party who invoked it, see Wright, Federal Courts § 7 (1970),[2] we must consider the problem.

The severity of this rule stimulated judicial ingenuity to avoid it with respect to the issue with which we are here concerned. In Handley-Mack Co. v. Godchaux Sugar Co., 2 F.2d 435 (6 Cir. 1924), Judge Knappen drew a distinction between § 2 of the Act of March 3, 1875, 18 Stat. 470, authorizing removal, *inter alia,* of actions "in which there shall be a controversy between citizens of different States," which he deemed to be jurisdictional in the true sense, and the provision limiting removal in diversity cases to a defendant not a resident of the state where the action was brought. Drawing on Baggs v. Martin, 179 U.S. 206, 21 S.Ct. 109, 45 L.Ed. 155 (1900), he held that where only the latter provision was violated and the plaintiff made no timely request for remand, the situation could be considered to be as if the plaintiff had brought the action in the federal court and, if jurisdiction would have existed in that event, objection on the score of nonremovability would be deemed waived. Although the historical argument was rather shaky,[3] the result was desirable and Judge L. Hand, writing also for Judge Swan and Judge A. N. Hand, found Judge Knappen's opinion "conclusive." Bailey v. Texas Co., 47 F.2d 153, 155 (2 Cir. 1931). We are quite content to follow our distinguished

1. Since, under 28 U.S.C. § 1332(c), Overmyer Ohio is deemed a citizen of New York for the purpose of § 1441, there would have been no possibility of justifying the removal under § 1441(c).

2. The quoted adjective comes, of course, from Chief Justice Erle's famous characterization, quoted in Pound, Mechanical Jurisprudence, 8 Colum.L.Rev. 605, 608 (1908), and III Pound, Jurisprudence 511 (1959). Conformably with Pound's prediction that such rules ultimately lead to curative action, the American Law Institute has proposed legislation to limit this harsh doctrine. Study of the Division of Jurisdiction between State and Federal Courts § 1386.

3. The 1875 statute allowed removal, without restriction, at the instance of either plaintiff or defendant. But these sweeping provisions were soon superseded by the Act of March 3, 1887, 24 Stat. 552, as corrected by the Act of August 13, 1888, 25 Stat. 433, both of which limited removal to defendants. Section 2 of the 1888 statute broke removal into two categories. Actions presenting a federal question might be removed by any defendant, but diversity actions could be removed only "by the defendant or defendants therein, being non-residents of that State," subject to a provision with respect to separable controversies. This was carried forward in § 28 of the Judicial Code of 1911, 36 Stat. 1094. In other words, from 1888 until 1948 the provision limiting removal for diversity to a non-resident defendant was in the same sentence authorizing removal itself, and a rather sharp scalpel was needed to dissect out one part of the sentence as jurisdictional and leave the other as not.

predecessors, especially since the two cases were cited in American Fire & Casualty Co. v. Finn, 341 U.S. 6, 16–17 n.14, 71 S.Ct. 534, 95 L.Ed. 702 (1951), with what could be regarded as approval and certainly was not disapproval.

▮ Not seriously disputing this, appellants question whether there would have been jurisdiction had the action been originally brought in a federal court. The only doubt arises from the fact that the Woodward partnership has its principal office in New York and is alleged to have been organized under New York law, whatever that may mean. Although New York permits partners to sue or be sued in the partnership name, CPLR § 1025, this does not alter the long-standing rule that, for purposes of diversity jurisdiction, the court looks to the citizenship of the partners, Great Southern Fireproof Hotel Co. v. Jones, 177 U.S. 449, 456, 20 S.Ct. 690, 44 L.Ed. 842 (1900); A. D. S. Developers, Inc. v. Tucker, 263 F.Supp. 986 (E.D.Pa.1967); contrast Colonial Realty Corp. v. Bache & Co., 358 F.2d 178, 183–184 (2 Cir. 1966), dealing with a limited partner. We thus uphold federal jurisdiction and must now recount the proceedings below.

Immediately upon the action being removed, defendants, on January 2, 1968, filed a motion to dismiss the complaint. This was based on a contention concerning improper presentment of the allegedly defaulted note of Overmyer Ohio, a contention so utterly trivial and unmeritorious as not to warrant statement here. Three weeks later they filed a motion for a change of venue to the District of Massachusetts. This motion, almost certainly ill-founded in a mortgage foreclosure action, see 1 Moore, Federal Practice ¶ 0.142 [2.–1] and cases there cited in n.16, alleged that the notes in suit had been given for plaintiffs' performance of engineering services in many states; that after delivery of the notes and payment of some, defendants learned that plaintiffs had "unwarrantably and negligently" delegated their duties to others; and that as a result defendants' affiliate, Green & White Con-

struction Company, Inc., on whose behalf the notes had been given by Overmyer Ohio, had instituted an action to recover damages in the District of Massachusetts in which Overmyer New York had joined to seek an injunction against the mortgage foreclosure.

After submitting affidavits in opposition to both motions, plaintiffs, in June 1968, cross-moved for summary judgment. The moving affidavit recited that the Massachusetts action, brought by Green & White and Overmyer New York against Goldberg-Zoino & Associates, Inc., a Massachusetts corporation, and two of the Woodward partners, had been dismissed with respect to the latter on jurisdictional grounds. A supplemental affidavit later apprised the court that the judge in Massachusetts had allowed Green & White but not Overmyer New York to file an amended complaint naming all the Woodward partners. In October 1968 defendants responded with an affidavit of their general counsel again raising the presentment issue and mentioning the claim of professional misconduct in a conclusory fashion, as hereafter noted. At the same time Green & White moved for leave to intervene as a plaintiff; its proposed complaint asserted the same claim against the Woodward partners it had alleged in Massachusetts. All four motions were argued in November. A year later, on November 20, 1969, the court denied defendants' motions to dismiss the complaint and for change of venue and Green & White's motion to intervene, and granted plaintiffs' motion for summary judgment. The portion of the opinion relating to the last discussed only the argument about presentment and said nothing about the claim of professional negligence. The judge directed plaintiffs' attorneys to prepare an order which, unless consented to, should be settled on notice.

Defendants responded with a renewed motion, served December 18, 1969, this time made by them as well as by Green & White, to allow the latter to intervene as a plaintiff in order to assert its claim

against the plaintiffs and in the meanwhile to stay the summary judgment. Circumstances were alleged to have changed because of the discontinuance of the Massachusetts action due to inability to serve all the Woodward partners. In one of the moving affidavits, by the general counsel of the Overmyer corporations, we find the first inkling that this claim, still alleged to be vested in Green & White, had somehow passed to Overmyer Ohio. The affidavit asserted that in February 1968, some eight months before the initial Green & White motion to intervene as a plaintiff, Overmyer Ohio had assumed all its liabilities "and in consideration therefor became entitled to all the claims and accounts receivable of said Green & White, liquidated and unliquidated"; that "in order to make said transfer effective" Green & White and Overmyer Ohio adopted resolutions transferring the claim against the Woodward partners to the latter;[4] and that "it is the purpose of this assignment to express the true ownership of this claim, and make possible its satisfaction by decision of this Court which has jurisdiction of the W–C–S partnership." Plaintiffs filed opposing papers and the judge denied the motion on January 5, 1970.

Somewhere along the line plaintiffs submitted an order of foreclosure and sale in the usual form. On January 14, 1970, defendants served a counter-proposed order with only a minor modification. The judge signed the plaintiffs' order on January 23.

The final chapter was a motion by the defendants and Green & White dated February 12, 1970, for a rehearing with respect to their renewed motion. This asked the judge to sign a new order that would allow the Overmyer defendants to file answers to the complaints containing counterclaims within ten days, and to apply for a stay of the judgment of foreclosure and sale within another ten. Instead the judge signed an order by which he simply granted rehearing and

adhered to his previous decision. With that this tedious recital ends.

The case illustrates a difficulty that may arise when a defendant, as required by F.R.Civ.P. 12(b), moves under that rule before answer and plaintiff counters with a motion for summary judgment. The Overmyer corporations argue that entry of summary judgment against them deprived them of the right, conferred by F.R.Civ.P. 12(a), whereby if the court denies a 12(b) motion or postpones its disposition until a trial on the merits, the defendant may file a responsive pleading within ten days. They contend that if the judge had denied their motions promptly instead of holding them for disposition with the plaintiffs' summary judgment motion, they could have filed an answer containing the counterclaim for professional malpractice and should be allowed to do so even at this late stage.

We can conceive of a situation, e. g., where a defendant acquired a counterclaim after submission of a plaintiff's summary judgment motion, where a contention of this sort might have merit. But this is not such a case. Before defendants had even made their motion to dismiss they were aware of the claim of defective service rendered to Green & White. When plaintiffs moved for summary judgment, it was open to the Overmyer corporations to raise against this the point that because of plaintiffs' misconduct the consideration for the notes had failed, quite apart from any ruling the court might make on Green & White's motion to intervene for the purpose of seeking a recovery. Yet the only paper they submitted in answer to plaintiffs' motion was a short affidavit by their general counsel which, after attempting to deal with the presentment issue, set forth in a conclusory manner that it had been "officially brought" to his attention that the work for which the notes had been given "was negligently, carelessly, unprofessionally, unskillfully performed and unlawfully delegat-

---

4. The affidavit did not give the dates of the resolutions or attach copies.

ed without authority or permission by said partnership to other persons unknown to Green & White Construction Company, Inc., for whom said engineering work was to be done."[5]  This was so far from meeting the requirements of F.R.Civ.P. 56(e) that discussion or citation of authority would be supererogatory.  Moreover the judge had every reason to suppose that on this issue the defendants were placing primary reliance on the claim which their affiliate, Green & White, sought to assert by its motion for leave to intervene,[6] although, as defendants now contend, Green & White had transferred the claim to Overmyer Ohio in February so that the affidavit in response to the summary judgment motion could also have brought Overmyer's potential counterclaim to the court's attention.  Perhaps, despite all this, the judge might have allowed defendants to plead a counterclaim if they had done this within 10 days of his denial of their motion to dismiss on November 20, 1969.  Instead they waited until December 18 to make a motion, returnable January 5, 1970, which was primarily a renewal of the intervention motion although, as stated, one of the moving affidavits intimated that Overmyer Ohio had been the real owner of the claim all along.  Not until February 12, 1970, nearly three months after the denial of their Rule 12(b) motion, did defendants clearly indicate a desire to plead a counterclaim.

Defendants complain that they have never had a day in court on their claim of professional malpractice and that the statute of limitations may now bar them from having one.  While this sort of contention inevitably strikes a responsive chord in the judicial ear, if ever there were a case where a litigant's plight was of his own making, this is it.  Bearing in mind the long delay to which plaintiffs have already been put, we think it clear that the interests of justice require affirmance of the judgment.

It is so ordered.

---

5. A following paragraph was to the same effect.

6. This motion was clearly for permissive intervention under F.R.Civ.P. 24(b) and denial was not an abuse of discretion.