**UNITED NATIONAL INSURANCE CO., Plaintiff,**

v.

**WATERFRONT N.Y. REALTY CORP., William M. Weaver, William M. Weaver Trust, Coleman P. Burke, Adreas M. Rickenbach, Antone E. Schrafl, Loring D. Bolger, Bulgroup Properties, Chalet Suiss International, Inc., C.A. Kalman, James A. Newman, John C. West, Karl–Adam Bonnier, Francis P. Lang, Maag Finance Ltd., Tuckerman Ltd. and U.S. Friends Investment Corp. (Panama), d/b/a Waterfront N.Y., Defendants.**

Nos. 93 Civ. 8220 (SAS), 89 Civ. 4525 (SAS).

United States District Court, S.D. New York.

Aug. 24, 1995.

Andrew J. Entwistle, Wohl & Entwistle LLP, New York City, for Plaintiff, United National Insurance Co.

Richard Imbrogno, Warren A. Herland, Jones Hirsch Connors & Bull, New York City, for Defendants, Waterfront N.Y. Realty Corp., et al.

*OPINION AND ORDER*

SCHEINDLIN, District Judge:

In these lengthy and complex cases United National Insurance Company ("United") seeks to have this Court determine its obligations and enforce its rights with respect to an insurance policy issued by United to The Tunnel, a discotheque owned by defendant Waterfront N.Y. Realty Corp. ("Waterfront").

## I. FACTUAL BACKGROUND

### A. *The State Action*

The dispute between United and Waterfront originated when Lourdes Ortiz commenced an action in Supreme Court, New York County (the "Ortiz action"), against Waterfront and The Tunnel, alleging that she had been raped while in the discotheque.[1] *See* Affidavit of Richard Imbrogno ("Imbrogno Aff."), counsel for Waterfront, dated May 18, 1995. Waterfront was initially defended in the Ortiz action by counsel appointed by its insurer, Commerce and Industry Insurance Company ("Commerce"). *Id., see also* Exhibit D to the Affidavit of Warren Herland ("Herland Aff."), counsel for Waterfront, dated June 22, 1994. The Tunnel was defended in the Ortiz action by counsel appointed by its insurer, United. *See* Imbrogno Aff. at ¶ 3. The Tunnel's defense was provided subject to United's reservation of its right to deny coverage of the Ortiz claim based on an "assault and battery" exclusion in the United policy. *Id.* After filing an answer and cross-claim against The Tunnel in the Ortiz action, Waterfront requested that United provide a legal defense and indemnify it with respect to the Ortiz claim (i) on the grounds that Waterfront was an additional insured on the United policy issued to The Tunnel and (ii) pursuant to an indemnification agreement in the Waterfront/Tunnel Lease. *Id.* at ¶ 4, *see* Exhibit 6 to Imbrogno Aff. In July 1989, United assumed the defense of Waterfront with a "reservation of rights" and appointed the same firm defending The Tunnel.[2] *See* Imbrogno Aff. at ¶ 5; *see also* Exhibit 6 to Imbrogno Aff.

On November 21, 1991, the Supreme Court, New York County struck the answers of Waterfront and The Tunnel due to their failure to comply with seven (7) discovery Orders. *See* Exhibit 1 to Imbrogno Aff. On December 1, 1992, the Appellate Division, First Department affirmed the Supreme Court's Order striking both The Tunnel and Waterfront's answers. *See* Exhibit 2 to Imbrogno Aff. The next day, December 2, 1992, the underlying action was settled for $1,050,000. *See* Exhibit 3 to Imbrogno Aff. United, whose policy was subject to a $500,000 limitation of liability, paid $500,000 of that amount but reserved its right to seek reimbursement of the $500,000 it paid "from the other carriers affording coverage to the defendants," i.e. Commerce. *Id.* The remaining $550,000 of the settlement amount was paid by Commerce on behalf of Waterfront. *Id.*

### B. *The 1989 Declaratory Judgment Action*

In June 1989, United commenced an action in this Court seeking a declaration that United was not required to defend or indemnify either Waterfront or The Tunnel because of the "assault and battery" exclusion of the United policy (the "Declaratory Judgment action"). *See* Exhibit B to Herland Aff. One of the named defendants in the Declaratory Judgment action was John C. West ("West"), a limited partner in Waterfront and a citizen of Pennsylvania.[3] *Id.* At the time the action was commenced, United was a Pennsylvania corporation with its principal place of business in Pennsylvania. *Id.* On December 4, 1991, subsequent to the commencement of the Declaratory Judgment action, West died. *See* Exhibit 9 to Imbrogno Aff.

On October 25, 1991, this Court granted summary judgment to Waterfront and declared that United was obligated to defend and indemnify Waterfront and The Tunnel with respect to the Ortiz action. *See* Exhibit

---

1. Waterfront is the landlord and owns the premises where The Tunnel is located.

2. The dispute over whether United was obligated to defend and indemnify Waterfront and The Tunnel focused on an exclusion in the policy issued by United for "claims arising out of an assault and/or battery." United argued that Ortiz's claim that she was raped and sodomized fell under the policy exclusion. The specific rights reserved by United in assuming the defense of Waterfront are disputed. United asserts that it

agreed only to "provisionally fund" the defense of Waterfront and reserved the right to assign the defense back to Commerce if claims were made against Waterfront that were found to be outside the scope of the policy. Commerce claims that United only reserved rights with regard to United's obligation to indemnify not its obligation to defend Waterfront.

3. Mr. West was incorrectly named in the Declaratory Judgment action as John C. Wist.

4 to Imbrogno Aff. By Opinion dated June 2, 1993, the Second Circuit reversed this Order and held that "[t]he policy contains no obligation to defend or indemnify Waterfront or The Tunnel, Inc. with respect to Ms. Ortiz's claim." *United Nat. Ins. v. Waterfront NY Realty Corp.*, 994 F.2d 105, 110 (2d Cir.1993). Subsequently, Waterfront moved for leave to file an Amended Answer and United moved for a judgment in its favor.[4] By Order dated June 8, 1994, this Court denied Waterfront's motion to file an Amended Answer and granted United's motion for a judgment in its favor.

On June 24, 1994, Waterfront moved pursuant to Fed.R.Civ.P. 59(e) and 12(h)(3), to dismiss the complaint for lack of subject matter jurisdiction and vacate the June 8 Order. Waterfront asserts that because both Waterfront's limited partner West and United were citizens of Pennsylvania there was no diversity of citizenship.[5] In response, United moved, pursuant to Fed.R.Civ.P. 15(a), for leave to file an Amended Complaint deleting defendant John C. West from the complaint and for an Order deeming the Amended Complaint to be served *nunc pro tunc*. Waterfront then moved for an order permitting it to supplement the record with respect to its pending motions to dismiss and vacate the June 8 Order. Because the Court has sufficient information before it to decide the pending motions in the Declaratory Judgement action, Waterfront's motion to supplement the record is denied.[6]

### C. *The 1993 Recovery Action*

On December 1, 1993, United commenced another action in this Court seeking recovery of the money it expended to defend and settle the Ortiz action (the "Recovery action"). *See* Exhibit 7 to Imbrogno Aff.

West, who had died before the commencement of the action, was named as a defendant in the Recovery action.[7] *Id.*

On June 20, 1995, pursuant to Fed.R.Civ.P. 12(b)(1), Waterfront moved to dismiss the Recovery action for lack of subject matter jurisdiction asserting that although West had died prior to the filing of the complaint, his estate was a limited partner in Waterfront and was deemed to be a citizen of Pennsylvania under 28 U.S.C. 1332(c)(2). *See* Imbrogno Aff., at ¶¶ 17–19. Therefore, Waterfront argues, complete diversity, as required by 28 U.S.C. 1332, is lacking. *Id.*

## II. DISCUSSION

■■■ It is well established that in order for diversity jurisdiction to exist under 28 U.S.C. § 1332, the citizenship of each plaintiff must be different from the citizenship of each defendant. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 187, 110 S.Ct. 1015, 1017, 108 L.Ed.2d 157 (1990); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *KMB Warehouse Distr., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 130 (2d Cir. 1995); *Airlines Reporting Corp. v. S and N Travel, Inc.*, 58 F.3d 857, 861 (2d Cir.1995). In determining whether complete diversity exists, the court must look to the citizenship of the parties at the time the action was commenced. *See Freeport–McMoRan Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428, 111 S.Ct. 858, 859, 112 L.Ed.2d 951 (1991); *Maryland Casualty Co. v. W.R. Grace and Co.*, 23 F.3d 617, 622 (2d Cir.1993). An action is commenced when the complaint is filed. Fed.R.Civ.P. 3; *see Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 73 (2d Cir.1984); *National Union Fire Ins. Co. v. Barney Assocs.*, 130 F.R.D. 291, 294

---

4. After deciding that United was not obligated to defend the Ortiz action, the Second Circuit directed the district court "to enter judgment consistent with this opinion." *United Nat. Ins. v. Waterfront NY Realty Corp.*, 994 F.2d 105, 110 (2d Cir.1993).

5. Waterfront's motions to dismiss and vacate the June 8 Order were improperly labelled as motions under Fed.R.Civ.P. 12(h)(3) and 59(e). The motions should have been brought pursuant to Rules 12(b)(1) and 60(b)(4).

6. This ruling is consistent with my Memorandum Endorsed Orders of April 10, 1995 where I denied the requests of both parties to submit further briefs on the issue of subject matter jurisdiction.

7. At the time the Recovery action was commenced United continued to be a Pennsylvania corporation with its principal place of business in Pennsylvania. Defendant West was misnamed in the Recovery action as John C. Wist.

(S.D.N.Y.1990). If diversity jurisdiction exists at the time the action is commenced, a subsequent change in the citizenship of the parties does not divest the court of jurisdiction. *Freeport–McMoRan,* 498 U.S. at 428, 111 S.Ct. at 859; *Smith v. Sperling,* 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1114 n. 1, 1 L.Ed.2d 1205 (1957); *Wichita Railroad & Light Co. v. Public Util. Comm'n of Kansas,* 260 U.S. 48, 54, 43 S.Ct. 51, 53, 67 L.Ed. 124 (1922); *In re Agent Orange,* 818 F.2d 145, 163 (2d Cir. 1987).

■ When a partnership is a party, the court looks to the citizenship of each individual partner at the time the action is commenced. *See Great Southern Fireproof Hotel Co. v. Jones,* 177 U.S. 449, 456, 20 S.Ct. 690, 693, 44 L.Ed. 842 (1900); *Woodward v. D.H. Overmyer Co.,* 428 F.2d 880, 883 (2d Cir.1970), *cert. denied,* 400 U.S. 993, 91 S.Ct. 460, 27 L.Ed.2d 441 (1971). In suits involving limited partnerships, the court must look to the citizenship of all general and limited partners. *See Carden,* 494 U.S. at 192, 110 S.Ct. at 1019.

**A. The Motions in the Declaratory Judgment Action**

There are three (3) pending motions in the Declaratory Judgment action: (i) by Waterfront to dismiss for lack of subject matter jurisdiction; (ii) by United to amend the complaint to remove West as a defendant; and (iii) by Waterfront to vacate Judge Lowe's Order dated June 8, 1994.

**1. The Motion to Dismiss for Lack of Subject Matter Jurisdiction**

At the time the Declaratory Judgment action was commenced in June 1989, West was a limited partner in Waterfront and was named as a defendant. United does not dispute the fact that West was a citizen of Pennsylvania but rather contends that Waterfront not be allowed to interpose a jurisdictional defense at this point because all the dispositive issues between the parties have been resolved and all that is left to be done is the "ministerial task" of entering judgment. United further argues that if this Court does entertain Waterfront's jurisdictional objection, that United be allowed to amend its

complaint so they may "delete" West as a defendant.

■ A court must dismiss an action "whenever it appears ... that the court lacks jurisdiction of the subject matter.." Fed. R.Civ.P. 12(h)(3). Challenge to a court's subject matter jurisdiction may be raised at any time during the litigation. *See Maryland Casualty Co.,* 23 F.3d at 621 (holding that a renewed challenge to subject matter jurisdiction ten years after the litigation began was valid because "jurisdiction may be raised at any time during the course of litigation").

■ Because subject matter jurisdiction can be raised at any point in time, even after final judgment, Waterfront's jurisdictional objection is timely. As noted earlier, the Court must look to the citizenship of the parties at the time the action was commenced to determine if diversity exists. As both West and United were citizens of Pennsylvania at the time the Declaratory Judgment action was filed, complete diversity was lacking. The fact that West died during the course of the litigation has no affect on this Court's lack of subject matter jurisdiction.

**2. The Motion to Amend the Complaint to Remove West as a Defendant**

United argues that under *Samaha v. Presbyterian Hospital,* 757 F.2d 529 (2d Cir. 1985), the Court must grant United leave to file an amended complaint under Fed. R.Civ.P. 15(a). *Samaha* held that where leave is sought to eliminate a defendant in order to preserve diversity jurisdiction, the court's refusal to grant such leave is an abuse of discretion *"unless it appears that a nondiverse defendant cannot be dropped from an action without prejudice to the remaining defendants."* *Id.* at 531 (quoting *Kerr v. Compagnie de Ultramar,* 250 F.2d 860, 864 (2d Cir.1958)) (emphasis added). The prejudice is the same as that which results where nondispensable parties are not joined. *Id.* United argues that West is a dispensable party and it would therefore be an abuse of discretion to deny its motion to amend the complaint to remove West.

An in-depth analysis is unnecessary, however, because the Supreme Court has held that when a plaintiff sues a partnership, the citizenship of all partners, both limited and general, must be considered in determining whether diversity jurisdiction exists. *See Carden,* 494 U.S. at 192, 110 S.Ct. at 1019. The plaintiff cannot invoke the diversity jurisdiction of the federal courts based on the citizenship of some but not all partners. *Id.*

> In sum, we reject the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members. We adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of "all the members" ...

*Id.* at 195, 110 S.Ct. at 1021 (quoting *Chapman v. Barney,* 129 U.S. 677, 682, 9 S.Ct. 426, 427, 32 L.Ed. 800 (1889)). Accordingly, United cannot simply remove West as a named defendant because West was a partner in Waterfront at the time the Declaratory Judgement action was commenced.[8]

Because I find that complete diversity was absent at the commencement of the Declaratory Judgment action and that plaintiff may not amend the complaint to remove West as a named defendant, the Declaratory Judgment action is dismissed for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).

### 3. *The Motion to Vacate the June 8 Order*

A judgment rendered by a court that lacks subject matter jurisdiction is void. *See* Fed.R.Civ.P. 60(b)(4); *see also Berardi v. Dah Yang Ind. Co., Ltd.,* 1995 WL 5862, *1 (S.D.N.Y. Jan. 6, 1995); *Asher v. Van Brunt,* 158 F.R.D. 278, 279 (S.D.N.Y.1994). Once a judgment is found void the Court must vacate it, there is no discretion. *See Berardi,* 1995 WL 5862, at *1. In addition, a motion to vacate a judgment for lack of jurisdiction may be brought at any time after final judgment. *See McLearn v. Cowen & Co.,* 660 F.2d 845, 848 (2d Cir.1981). Because this Court lacks subject matter jurisdiction over the Declaratory Judgment action, the June 8 Order is vacated pursuant to Fed.R.Civ.P. 60(b)(4).

### B. *The Motion in the 1993 Recovery Action*

Waterfront has moved to dismiss the Recovery action for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). The issues raised by this motion, however, differ from those discussed above because the Recovery action was commenced *after* West's death.

Waterfront contends that on the date of West's death, December 4, 1991, he was a citizen of Pennsylvania and, therefore, under 28 U.S.C. § 1332(c)(2), West's estate is deemed to be a citizen of Pennsylvania. Waterfront further contends that upon West's death his estate became and continues to be a limited partner of Waterfront, including on December 1, 1993, when the Recovery action was commenced. Waterfront argues, therefore, that because West's estate was a limited partner in Waterfront when the Recovery action was commenced and because the estate is deemed to be a citizen of Pennsylvania, complete diversity of jurisdiction did not exist when the Recovery action was commenced and this Court lacks subject matter jurisdiction.

United does not dispute that West was a citizen of Pennsylvania on the date of his death nor does it dispute that West's estate

---

**8.** United also argues that this Court has subject matter jurisdiction under *Curley v. Brignoli, Curley & Roberts Assocs.,* 915 F.2d 81 (2d Cir.1990) and *Turtur v. Rothschild Registry Intern, Inc.,* 26 F.3d 304 (2d Cir.1994). In *Curley,* the Second Circuit addressed *Carden* and the issue of diversity jurisdiction where a limited partner in the defendant partnership was nondiverse. The Court found subject matter jurisdiction existed after recharacterizing the lawsuit as a class action and dismissing *the partnership* as a nones- sential party under Rule 19(b). Similarly, in *Turtur* the Second Circuit dismissed a defectively served defendant partnership as a nonessential party in order to preserve diversity jurisdiction. In contrast, United does not contend that the defendant partnership Waterfront is a dispensable party but rather that a Waterfront limited partner should be dismissed as a nonessential party; a contention directly contrary to the holding of *Carden.*

is deemed to be a citizen of Pennsylvania under 28 U.S.C. § 1332(c)(2). United argues, however, that West's estate never became a limited partner in Waterfront and that the estate merely holds a partnership interest.[9] As a result, United contends that this Court should not consider the citizenship of the estate in determining whether complete diversity between the parties existed at the time the Recovery action was commenced.[10]

### 1. The Partnership Agreement

Paragraph 7.4(a) of the Amended and Restated Agreement of Limited Partnership of Waterfront N.Y., dated January 31, 1983 (the "Agreement"), states that

> ... a transferee of an Interest shall not be recognized as a Limited Partner or have any of the rights conferred upon a Limited Partner with respect to such Interest until such time as he shall have complied with all the provisions of Section 7.4(b) hereof; *provided, however,* that the personal representative, guardian or other successor in interest of a deceased ... Limited Partner ... shall be entitled to receive the share of income, gain, distributions and, upon dissolution of the Partnership, the share of the assets of the Partnership to which such deceased ... Limited Partner ... would have been entitled under the terms of this Agreement.

*See* Exhibit A to Affidavit of Andrew J. Entwistle ("Entwistle Aff."), counsel for United, dated June 8, 1995, at p. 16 (emphasis in original). Paragraph 7.4(b) of the Agreement provides that

> [a]ny transferee of an Interest shall be entitled to be admitted as a substituted Limited Partner hereunder and to have all of the rights herein conferred upon a Limited Partner if: (i) the General Partners receive a copy of the instrument effecting

such transfer; (ii) such transferee's admission as a substituted Limited Partner will not, in the opinion of the General Partners, jeopardize the treatment of the Partnership as a partnership for federal income tax purposes ...; (iii) such transferee makes the representations and warranties referred to in Article XII hereof; and (iv) such transferee qualifies and becomes a substituted limited partner within the meaning of the [New York Limited Partnership] Act ... The admission of such transferee as a substituted Limited Partner shall be effected by an amendment to this Agreement ...

*Id.* United contends that because West's estate did not meet the requirements of Paragraph 7.4(b) of the Agreement, neither the estate nor West's executors became substituted limited partners of Waterfront. Waterfront contends, however, that under New York Partnership Law Section 110, the estate became a limited partner by operation of law and that Paragraph 7.4(b) of the Agreement does not apply to the estate during the period of settlement of the decedent's affairs.

### 2. New York Partnership Law

Section 110 of the New York Partnership Law states that

> (1) On the death of a limited partner his executor or administrator shall have all the rights of a limited partner for the purpose of settling his estate, and such power as the deceased had to constitute his assignee a substituted limited partner.

> (2) The estate of a deceased limited partner shall be liable for all his liabilities as a limited partner.

N.Y. Partnership Law § 110 (McKinney 1988 & Supp.1995). In addition, N.Y. Partnership Law § 108 states

> (2) A substituted limited partner is a person admitted to all the rights of a limited

---

9. A limited partner's interest in a partnership is personal property and, as such, passes to the partner's estate upon death unless otherwise provided in the Partnership Agreement. *See* N.Y. Partnership Law § 107.

10. United also notes that because West's Estate merely holds a partnership interest in Waterfront, the Estate is not an indispensable party to

the Recovery action and United could, if it desired, cross-move to dismiss the action as to West's Estate. *See, e.g., Jaser v. New York Property Ins. Underwriting Ass'n,* 815 F.2d 240 (2d Cir.1987). United further asserts that it is questionable whether West's Estate is even a proper party to the Recovery action. *See* Plaintiff's Memorandum of Law in Opposition, at p. 6.

partner who has died or has assigned his interest in a partnership.

(3) An assignee, who does not become a substituted limited partner, has no right to require any information or account of the partnership transactions or to inspect the partnership books; he is only entitled to receive the share of profits or other compensation by way of income, or the return of his contribution, to which his assignor would otherwise be entitled.

(5) An assignee becomes a substituted limited partner when the certificate is appropriately amended in accordance with section one hundred and fourteen of this article.[11]

Waterfront argues that the partnership rights granted to West's estate under Section 110(1), i.e. the rights "of a limited partner for the purpose of settling [West's] estate," are precisely the rights denied to an assignee under Section 108(3). Waterfront further argues that the partnership liability imposed upon West's estate by Section 110(2), is the type of liability from which an assignee is excluded.[12] Waterfront contends, therefore, that because the estate possesses all the rights and liabilities of a limited partner during the period of estate administration, the estate is a limited partner and its citizenship should be considered in determining whether complete diversity exists.

### 3. Which Controls—Partnership Agreement or Uniform Act

In *Bank of Bethesda v. Koch,* 44 Md.App. 350, 408 A.2d 767 (1979), the Court of Special Appeals of Maryland interpreted statutory language identical to Section 108.[13] In *Bethesda,* the court noted that a difference existed between the assignment of a limited

partner's interest and a substitution of a limited partner. The court held that in order for an assignee to become a limited partner, all the members of the limited partnership must first consent and that an assignee could not secure the rights of a limited partner until the original certificate is amended to indicate the substitution. *Id.*

In *Frye v. Manacare Ltd.,* 431 So.2d 181 (Fla.Dist.Ct.App.1983), the District Court of Appeal of Florida interpreted Section 620.21(1), Florida Statutes (1981) which is identical to N.Y. Partnership Law § 110(1). In *Frye,* the Administrator of the decedent limited partner's estate asserted that the partnership provisions combined with the Uniform Act permitted the Administrator to appoint herself as a substitute limited partner for all purposes. The Court rejected this argument stating that the Administrator ignored the provisions of the Agreement that gave the partnership the right to purchase a deceased partner's share. *Id.* at 183. The court held that the Administrator only possessed the "rights of a limited partner for the purpose of settling [decedent's] estate" and that whether the Administrator was treated as a limited partner by the partnership was irrelevant. *Id.*

■ Waterfront's argument is similar to that of the Administrator in *Frye.* To accept Waterfront's argument that West's estate is a limited partner because it possesses all the rights of a limited partner would ignore Paragraph 7.4(b) of the Agreement, which sets out the steps for an assignee to become a limited partner. Similarly, Waterfront's argument ignores N.Y. Partnership Law § 108(5) that requires the certificate to be amended in order for an assignee to become a limited partner. Waterfront's argument is

---

**11.** Section 114 sets forth the requirements for amendment or cancellation of the certificate. It includes a provision requiring that the amended certificate be signed and sworn to by all members and that it clearly state any changes to the original certificate.

**12.** New York's Revised Limited Partnership Act § 121–702(c) states that "until an assignee of a partnership interest becomes a partner, the as-

signee shall have no liability as a partner solely as a result of the assignment."

**13.** Both Maryland and New York adopted Section 19 of the Uniform Limited Partnership Act of 1916. In New York, Section 19 of the Uniform Act became N.Y. Partnership Law § 108. In Maryland, it became § 10–118 of the Maryland Uniform Limited Partnership Act.

flawed in another way. Though Waterfront argues that West's estate has all the rights of a limited partner under N.Y. Partnership Law § 110(1), this section only gives the estate those "rights of a limited partner for the purpose of settling his estate."[14]

In conclusion, I find that West's estate was not a substituted limited partner in Waterfront as the requirements of Paragraph 7.4(b) of the Agreement were not met. Because the estate was not a limited partner at the time the Recovery action was filed, the citizenship of the estate need not be considered for diversity purposes. Thus complete diversity existed at the time the Recovery action was filed and this Court has subject matter jurisdiction. *See Carden,* 494 U.S. at 195, 110 S.Ct. at 1021 (holding that a court must only consider the citizenship only of members of the partnership).

### III. SUMMARY

For the foregoing reasons, Waterfront's motions in the Declaratory Judgement action, Docket No. 89–4525, to dismiss for lack of subject matter jurisdiction and to vacate the June 8, 1994 Order, are granted. United's motion in the Declaratory Judgment action to amend the complaint is denied. Waterfront's motion in the Recovery action, Docket No. 93–8220, to dismiss for lack of subject matter jurisdiction is denied.

SO ORDERED.

---

**14.** Waterfront also asserts that because it treated West's Estate as a limited partner, the Estate is a limited partner *inter se.* This argument, however, also ignores Paragraph 7.4(b) of the Partnership Agreement and N.Y. Partnership Law § 108(5). *See Frye,* 431 So.2d at 183.