# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1947

_____

Delbert L. Dunmire,                          *
                                             *
            Appellant,                       *
                                             *    Appeal from the United States
      v.                                     *    District Court for the
                                             *    Western District of Missouri.
Morgan Stanley DW, Inc.,                     *
                                             *
            Appellee.                        *

_____

Submitted: November 15, 2006
Filed:  February 5, 2007

_____

Before RILEY, HANSEN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

This case arises from the service of a demand letter addressed from Morgan Stanley DW, Inc. ("Morgan Stanley") to Delbert L. Dunmire upon Dunmire's estranged wife. Dunmire filed suit against Morgan Stanley, alleging that the letter disclosed confidential information in violation of the Gramm-Leach-Bliley Act (GLBA). Based upon this alleged violation, Dunmire pursued state law claims of negligence per se, breach of contract, fraudulent misrepresentation, negligent misrepresentation, breach of fiduciary duty, and negligence against Morgan Stanley.

Morgan Stanley filed a motion for summary judgment, and the district court[1] granted the motion, finding that because no violation of the GLBA had occurred, each of Dunmire's state law claims failed. We affirm.

## I. *Background*

Dunmire opened an investment account at Dean Witter Reynolds, Inc. ("Dean Witter") with broker John Hoffman in 1982. Hoffman acted as Dunmire's broker until Matt Hoffman, John's son, took over his father's business. Dunmire's account was an individual account, and Dunmire did not grant authority for any other individuals to receive his account information. In fact, Dunmire had signed a Securities Account Agreement, which provided:

> Communications may be sent to me at the mailing address on file with you, or at such other address as I may hereafter give in writing, and all communications, so sent, whether by mail, telegraph, messenger or otherwise, shall be deemed given to me personally, whether actually received or not.

Dunmire signed documents indicating that the address to be used for purposes of communicating about his account was 905 E. Pearl in Harrisonville, Missouri ("the Pearl Address"). In other executed documents, Dunmire promised to notify Dean Witter of any changes of address. Dunmire never notified Dean Witter, or its successor Morgan Stanley, of any change of address.

In 1990, Dunmire remarried Deborah Dunmire.[2] Prior to the 1990 marriage, Dunmire and Deborah entered into an antenuptial agreement, which provided that, in the event of the second marriage's termination, neither party would seek or accept

---

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

[2]Dunmire and Deborah had divorced in 1988.

alimony, maintenance, or support and each party would retain the property that they owned on the date of the marriage. Additionally, the antenuptial agreement stated that the parties had "fully disclosed to each other the nature and extent of their respective property, liabilities and sources of income." According to Dunmire, he disclosed the nature and extent of his Dean Witter accounts to Deborah at the time of the antenuptial agreement. Also, while Dunmire and Deborah lived at the Pearl Address, Deborah had access to Dunmire's mail.

After Dean Witter merged with Morgan Stanley in 1997, Morgan Stanley adopted a privacy policy pursuant to the GLBA and corresponding regulations. The policy provided, in relevant part, that Morgan Stanley could "disclose personal information we collect about you to other Morgan Stanley companies and non-affiliated third parties *as required or permitted by law*." (Emphasis added).

Sometime in 2000, Dunmire and Deborah separated, and Dunmire moved out of the home located at the Pearl Address. Dunmire failed to provide Morgan Stanley with a new address, so Morgan Stanley continued to send statements, confirmations, and other correspondence to Dunmire at the Pearl Address.

In October 2003, Dunmire filed for divorce from Deborah. The divorce proceedings were acrimonious and were protracted by the parties' legal maneuverings. During the pendency of Dunmire's divorce, Dunmire and Morgan Stanley disputed the management of Dunmire's account. In April 2004, Morgan Stanley liquidated Dunmire's silver position because Dunmire failed to meet a margin call. After Morgan Stanley liquidated the account, Matt Hoffman attempted to contact Dunmire by telephone but was unsuccessful. Matt Hoffman also wrote to Dunmire to advise him that he had attempted to contact Dunmire by telephone; Dunmire received this letter but did not respond. Matt Hoffman then contacted John Hoffman—Dunmire's previous broker for over 20 years. John Hoffman told Matt to contact Wayne Davidson, an attorney that he knew had previously represented Dunmire. John

Hoffman called Davidson because Matt Hoffman did not know Davidson; he left Davidson a voicemail message. Davidson, however, did not return the call.

In April 2004, Dunmire filed a reparations complaint against Morgan Stanley with the Commodity Futures Trading Commission (CFTC). The complaint set forth Dunmire's claim that Morgan Stanley was responsible for the "overall loss in excess of $2,075,000." Morgan Stanley, however, continued its collection efforts.

To recover the amount that it believed Dunmire owed, Morgan Stanley hired attorney Jack Malley who, on July 12, 2004, drafted a demand letter ("the First Demand") and addressed it to Dunmire at the Pearl Address. Malley, however, sent the First Demand to Davidson with a separate letter asking Davidson to deliver the First Demand to Dunmire. Davidson returned the First Demand, explaining that he did not represent Dunmire in the matter and was not authorized to accept the correspondence.

Malley then attempted to deliver the First Demand by other methods, including certified mail. Malley's attempts failed because Dunmire either was unavailable or unwilling to sign for receipt of the correspondence. All attempts to deliver the First Demand were made at Dunmire's Pearl Address—his last known mailing address. Neither Morgan Stanley nor Malley were aware that Dunmire no longer resided at the Pearl Address.

Malley then prepared a second letter ("the Second Demand") on August 26, 2004, which again demanded payment, detailed Morgan Stanley's efforts to deliver the First Demand, and included a copy of the First Demand. Because Malley was unaware that Dunmire no longer resided at the Pearl Address, he also addressed the Second Demand to the Pearl Address. Considering that previous attempts to confirm Dunmire's receipt of the documents had failed, Malley retained Hatfield Process Service ("Hatfield") to personally deliver the Second Demand. Hatfield is an

independent contractor, and the individual process servers it hires are independent contractors for Hatfield.

In the letter of instruction to Hatfield, Malley directed that the letter be "served" on Dunmire; it did not direct that the letter be delivered to Deborah. Hatfield assigned process server Julie Whyte the task of delivering the Second Demand. On August 28, 2004, Whyte went to the Pearl Address, but Dunmire was not there. Through her efforts, Whyte eventually reached Deborah by telephone. Deborah informed Whyte that "we're at an address on Orient Cemetery Road ("the Orient Address")" and invited Whyte to meet her there. Upon Whyte's arrival at the Orient Address, she told Deborah that she had "a delivery for Delbert." Deborah agreed to take the package. Whyte then notified Malley that she had served Deborah, but Malley instructed Whyte that he wanted her to personally serve Dunmire with the Second Demand. After Whyte's continued efforts to personally serve Dunmire failed, Hatfield assigned the task to Patricia Prewitt. Prewitt successfully served the Second Demand to Dunmire.

Following settlement of his divorce, Dunmire filed suit against Morgan Stanley, asserting state law claims for negligence per se, breach of contract, fraudulent misrepresentation, negligent misrepresentation, breach of fiduciary duty, and negligence. All six claims arise first from Dunmire's allegation that the Second Demand contained confidential financial information that was disclosed in violation of the GLBA[3] to Deborah, who was not a co-owner of the accounts in question.

---

[3]Specifically, under "Count I: Negligence Per Se," Dunmire's Amended Complaint states that "[t]he above and foregoing conduct of Morgan Stanley constitutes a violation of Morgan Stanley's federal statutory and regulatory duties owed to Mr. Dunmire, as more specifically set forth below:

a. Violations of the Gramm-Leach Bliley Act, 15 U.S.C. § 6801(a), which specifically states: "It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and

Dunmire also alleged that the disclosure to Deborah caused the divorce proceeding to be longer and more expensive, thereby damaging Dunmire financially and emotionally.

## II. *Discussion*

On appeal, Dunmire argues that the district court erred in granting summary judgment to Morgan Stanley because there is no dispute that Morgan Stanley disclosed "nonpublic personal information" to Deborah, which is protected by the GLBA and Morgan Stanley's own privacy policy. According to Dunmire, because this fact is undisputed, Morgan Stanley's justifications for disclosing his personal information raise material fact issues not suitable for summary judgment.

No private right of action exists for an alleged violation of the GLBA. *See, e.g.*, *Farley v. Williams*, No. 02-CV-0667C(SR), 2005 WL 3579060 (W.D. N.Y. Dec. 30, 2005) (unpublished); *Briggs v. Emporia State Bank & Trust Co.*, No. 05-2125-JWL, 2005 WL 2035038, at *3 (D. Kan. Aug. 23, 2005) (unpublished); *Am. Family Mut. Ins. Co. v. Roth*, No. 05 C 3839, 2005 WL 3700232 (N.D. Ill. Aug. 5, 2005) (unpublished); *Borninski v. Williamson*, No. Civ.A. 3:02-CV-1014, 2004 WL 433746 (N.D. Tex. Mar. 1, 2004) (unpublished); *Menton v. Experian Corp.*, No. 02 Civ. 4687(NRB), 2003 WL 21692820 (S.D. N.Y. July 21, 2003) (unpublished). Nonetheless, Dunmire, in his amended complaint, based his state law claims on the allegation that Morgan Stanley's conduct violated the GLBA. Accordingly, we must address whether the district court properly concluded that no violation of the GLBA

confidentiality of those customers' nonpublic personal information."

b. Violations of SEC Regulations, 17 C.F.R. § 248.10; and

c. Violations of CFTC Regulations, 17 C.F.R. § 160.10.

In each subsequent count, Dunmire "incorporates each and every preceding paragraph of his Complaint, as if fully set forth herein."

occurred when Morgan Stanley, through the process server, delivered the Second Demand to Deborah Dunmire.

The GLBA provides that "[i]t is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a). The GLBA defines "nonpublic personal information" as information "(i) provided by the consumer to a financial institution; (ii) resulting from any transaction with the consumer or any service performed for the consumer; or (iii) otherwise obtained by the financial institution." *Id*. § 6809(4)(A).

The GLBA, however, lists exceptions to the rule against disclosing nonpublic personal information. It permits financial institutions to disclose nonpublic personal information "as necessary to effect, administer, or enforce a transaction requested or authorized by the consumer . . . ." *Id*. § 6802(e)(1). "Necessary to effect, administer, or enforce the transaction" means that, *inter alia*, "the disclosure is required, or is one of the lawful or appropriate methods, to enforce the rights of the financial institution. . . ." *Id*. § 6809(7)(B). In turn, the CFTC's regulations provide that "necessary to effect, administer or enforce the transaction" means that the disclosure is "required or is a usual, appropriate or acceptable method" that is used "in connection with . . . [t]he authorization, settlement, billing, processing, clearing, transferring, reconciling or collection of amounts charged. . . ." 17 C.F.R. § 160.14(b)(2)(v)(A); *see also* 17 C.F.R. § 248.14(b)(2)(vi)(A).

We conclude that Dunmire's state law claims based on a violation of the GLBA fail for two reasons. First, Dunmire's financial information, i.e., his dispute with Morgan Stanley, lost its "nonpublic" character under the GLBA when Dunmire filed the reparations complaint against Morgan Stanley with the CFTC. This filing took place in April 2004—approximately four months before Whyte served Deborah with the Second Demand from Morgan Stanley. The filing disclosed that Dunmire was

claiming damages against Morgan Stanley in the amount of $2,075,000. Thus, Dunmire's financial information lost its nonpublic character when he filed his reparations complaint disclosing his financial information to the CFTC—a third party.

Second, even assuming that the Second Demand letter contained "nonpublic personal information," Dunmire's state law claims still fail because delivery of the Second Demand to Deborah was an appropriate and acceptable method of settling or collecting a debt it believed Dunmire owed—a valid exception under the GLBA. The Second Demand advised Dunmire of the amount that Morgan Stanley alleged was due. Before retaining Hatfield Process Service to effect personal delivery of the Second Demand, Morgan Stanley made *several* attempts to notify Dunmire about the alleged debt, including phoning him, sending the First Demand to Davidson, and sending the First Demand by certified mail. Additionally, Whyte, the process server, only served Deborah Dunmire after Whyte's unsuccessful attempt to locate Dunmire at the Pearl Address. We cannot say that Morgan Stanley's efforts to effectuate service were unreasonable, especially considering that Dunmire failed to notify Morgan Stanley that he no longer lived at the Pearl Address. Dunmire has offered no evidence that, if Morgan Stanley had mailed the Second Demand to the Pearl Address, Deborah could not have retrieved the Second Demand from the Pearl Address.

Therefore, because we hold that Morgan Stanley did not violate the GLBA, all of Dunmire's state law claims fail, as they were all predicated on the allegation that Morgan Stanley violated the GLBA.

## III. *Conclusion*

Accordingly, we affirm the district court's grant of summary judgment to Morgan Stanley.

_____