# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2892
_____

Brendan Holbein

*Plaintiff - Appellant*

v.

TAW Enterprises, Inc., doing business as Baxter Chrysler Dodge Jeep Ram of Bellevue

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: October 19, 2020
Filed: December 30, 2020

_____

Before SMITH, Chief Judge, LOKEN, COLLOTON, GRUENDER, BENTON, SHEPHERD, KELLY, ERICKSON, GRASZ, STRAS, and KOBES, Circuit Judges, En Banc.

_____

GRUENDER, Circuit Judge.

Brendan Holbein sued his former employer, TAW Enterprises, Inc., in Nebraska state court. TAW Enterprises removed the action to federal court and moved to dismiss for failure to state a claim. *See generally* Fed. R. Civ. P. 12(b)(6).

The district court[1] dismissed the action with prejudice. *Holbein v. Baxter Chrysler Jeep, Inc.*, No. 8:18CV222, 2018 WL 9538221 (D. Neb. Aug. 6, 2018). On appeal, a panel of this court vacated the dismissal and ordered the action remanded to state court, concluding that a removal defect left the district court without subject-matter jurisdiction. *Holbein v. Baxter Chrysler Jeep, Inc.*, 948 F.3d 931 (8th Cir. 2020). TAW Enterprises petitioned for rehearing *en banc*, asking us to reconsider the precedents that dictated the panel's disposition. *See generally id.* at 934 (discussing *Horton v. Conklin*, 431 F.3d 602, 605 (8th Cir. 2005), and *Hurt v. Dow Chemical Co.*, 963 F.2d 1142, 1146 (8th Cir. 1992)). We then vacated the panel opinion and granted rehearing *en banc*. Order, *Holbein v. Baxter Chrysler Jeep, Inc.*, No. 18-2892 (8th Cir. Mar. 19, 2020). We now overrule those precedents to the extent they hold that a violation of 28 U.S.C. § 1441(b)(2)—the so-called forum-defendant rule, *e.g.*, *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 378 (7th Cir. 2000)—is an unwaivable jurisdictional defect in removal. We thus have jurisdiction to reach the merits of Holbein's appeal. Doing so, we affirm the district court's dismissal.

## I.

In the fall of 2015, Holbein accepted a position as general manager of TAW Enterprises' automobile dealership in Bellevue, Nebraska. In June 2016, he learned that customers' confidential financial information in the possession of TAW Enterprises' finance director had been stolen. The customers were not informed of this theft. Instead, the finance director "devised a clever method of re-obtaining the financial information" from these customers without informing them that their financial information had been compromised. Holbein subsequently informed TAW Enterprises of this issue as well as other issues regarding TAW Enterprises' or its employees' noncompliance with certain provisions of the Gramm-Leach-Bliley Act

---

[1]The Honorable Laurie Smith Camp, then Chief Judge, United States District Court for the District of Nebraska, now deceased.

(the "Act"), *see generally* Pub. L. No. 106-102, 113 Stat. 1338 (1999) (codified as amended in scattered sections of 12 U.S.C., 15 U.S.C., 16 U.S.C., 18 U.S.C., and 29 U.S.C.), and those provisions' implementing regulations. In October 2016, TAW Enterprises demoted Holbein, resulting in a sixty-five percent reduction in his compensation. Holbein claimed TAW Enterprises demoted him because of his internal reporting about these matters.

In 2018, Holbein (then a citizen of Arizona) sued TAW Enterprises (a Nebraska corporation with its principal place of business there) in Nebraska state court. He asserted two causes of action. The first, labeled as arising under the Act, included two separate "theor[ies]" of recovery, one for "retaliation in contravention of public policy" and the other for "constructive discharge." The second was for breach of contract. Holbein alleged more than $2.5 million in damages.

TAW Enterprises removed the case to federal court, asserting federal-question jurisdiction given Holbein's reference to the Act in his complaint. *See generally* 28 U.S.C. § 1331. It then moved to dismiss. Holbein did not object to removal, though he opposed dismissal. The district court granted TAW Enterprises' motion to dismiss with prejudice. *Holbein*, 2018 WL 9538221, at *5.

Holbein appealed, challenging only the district court's dismissal of his first cause of action. In response to a question at oral argument before the panel, Holbein for the first time indicated he did not believe the district court had subject-matter jurisdiction. Subsequently, the panel held the district court lacked subject-matter jurisdiction, vacated the district court's dismissal, and ordered the case remanded to state court. *Holbein*, 948 F.3d 931. The panel found Holbein's first cause of action did not present a federal question, *see id.* at 936, leaving diversity jurisdiction under 28 U.S.C. § 1332 as the sole potential basis for federal subject-matter jurisdiction, *see id.* at 934. But, as TAW Enterprises admitted, it could not have removed on this basis because doing so would have violated the forum-defendant rule, 28 U.S.C.

§ 1441(b)(2), given that it is a citizen of Nebraska and was sued in Nebraska state court. Under circuit precedent, "violation of the forum-defendant rule is a 'jurisdictional defect.'" *Holbein*, 948 F.3d at 934 (quoting *Horton*, 431 F.3d at 605); *see also Hurt*, 963 F.2d at 1145-46. The district court thus lacked subject-matter jurisdiction over the action. *Holbein*, 948 F.3d at 936.

TAW Enterprises petitioned for rehearing *en banc*, asking us to reconsider whether violation of the forum-defendant rule is a jurisdictional defect in removal. After receiving Holbein's response to this petition, we ordered rehearing *en banc*.[2]

## II.

Congress has granted defendants sued in state court the right to remove the suit to federal district court if the civil action is one "of which the district courts . . . have original jurisdiction." 28 U.S.C. § 1441(a). When the action is "removable solely on the basis of the jurisdiction under [§] 1332(a)," however, the forum-defendant rule provides that the action "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Id.* § 1441(b)(2). When an action is removed improperly, the plaintiff may move to have it remanded to state court. *See id.* § 1447(c). If the motion to remand is based on any removal "defect other than lack of subject matter jurisdiction," that motion "must be made within 30 days after the filing of the notice of removal." *Id.* Otherwise, objections to removal based on such defects are waived. 14C Charles Alan Wright et al., *Federal Practice & Procedure* § 3739.2 (Rev. 4th ed. 2020). But if the removal defect leaves the district court without subject-matter jurisdiction, that

---

[2]Because TAW Enterprises did not ask us to reconsider the panel's holding regarding federal-question jurisdiction, we reinstate that portion of the panel opinion. *E.g.*, *Dillard v. O'Kelley*, 961 F.3d 1048, 1055 (8th Cir. 2020) (en banc).

defect cannot be waived and can be raised at any time, even on appeal. *See* 28 U.S.C. § 1447(c); *United States v. Afremov*, 611 F.3d 970, 975 (8th Cir. 2010).

Holbein did not challenge removal until oral argument before the panel. That delay did not matter because, in our circuit, removal in violation of the forum-defendant rule results in "an absence of subject-matter jurisdiction." *Hurt*, 963 F.2d at 1146 n.1; *see also Horton*, 431 F.3d at 605 (reaffirming *Hurt*). Nine other circuits have addressed whether the forum-defendant rule is jurisdictional in nature. All of them have held that violation of the rule is a nonjurisdictional, and thus waivable, removal defect. *Morris v. Nuzzo*, 718 F.3d 660, 665 (7th Cir. 2013); *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006); *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 50 n.2 (2d Cir. 2000); *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1372 n.4 (11th Cir. 1998); *Korea Exch. Bank, N.Y. Branch v. Trackwise Sales Corp.*, 66 F.3d 46, 50 (3d Cir. 1995); *In re Shell Oil Co.*, 932 F.2d 1518, 1521-23 (5th Cir. 1991); *Moores v. Greenberg*, 834 F.2d 1105, 1106 n.1 (1st Cir. 1987); *Plastic Moldings Corp. v. Park Sherman Co.*, 606 F.2d 117, 119 n.1 (6th Cir. 1979); *Am. Oil Co. v. McMullin*, 433 F.2d 1091, 1093-95 (10th Cir. 1970).

We now eliminate this lopsided circuit split and conclude that violation of the forum-defendant rule is a nonjurisdictional defect in removal that is waived if not raised in "[a] motion to remand . . . made within 30 days after the filing of the notice of removal." *See* § 1447(c). Holbein did not challenge removal until long after this period had expired, so he has waived TAW Enterprises' violation of the forum-defendant rule as a basis for remand to state court. In concluding that the forum-defendant rule is nonjurisdictional, first we consider the text of § 1441(a)-(b), then we examine § 1447(c) and its history, and finally we consider precedents relevant to the analysis. *See Murphy v. Smith*, 583 U.S. ---, 138 S. Ct. 784, 790 (2018) (looking at "the full field of textual, contextual, and precedential evidence" to interpret a statute).

A.

Whether the forum-defendant rule is jurisdictional ultimately turns on "whether Congress mandated" it be treated as such. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). The question before us, then, is principally one of statutory interpretation. Accordingly, as in any statutory-interpretation case, "we start . . . with the statutory text." *Liscomb v. Boyce*, 954 F.3d 1151, 1154 (8th Cir. 2020); *accord Henderson*, 562 U.S. at 438.

In § 1441(a), Congress gave defendants the right to remove from state to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," "[e]xcept as otherwise expressly provided by Act of Congress." Congress provided otherwise in the forum-defendant rule by prohibiting removal of a "civil action otherwise removable solely on the basis of the jurisdiction under [§] 1332(a) . . . if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." § 1441(b)(2).

Unlike other statutory provisions that unequivocally govern district-court jurisdiction, *e.g.*, 28 U.S.C. § 1331 (granting "original jurisdiction" over federal-question cases), neither § 1441(a) nor § 1441(b)(2) "speak in jurisdictional terms," suggesting Congress did not mean for them to have "jurisdictional attributes," *see Henderson*, 562 U.S. at 438 (internal quotation marks omitted). The text of the forum-defendant rule reinforces this point, as it recognizes that jurisdiction over removed cases does not come from § 1441(a) but elsewhere. *See* § 1441(b)(2) (referring to removability "on the basis of the jurisdiction under [§] 1332(a)").

Thus, § 1441(a) on its face is not a jurisdiction-granting provision, and § 1441(b)(2) on its face is not a jurisdiction-stripping provision. Instead, § 1441(a) gives certain state-court defendants access to a federal forum that already possesses

subject-matter jurisdiction over the type of action being removed. The forum-defendant rule, in turn, narrows the class of defendants who are entitled to exercise this right. Simply put, the rule strips forum defendants of the statutory right to remove; it does not strip district courts of jurisdiction they otherwise have to adjudicate the sorts of actions forum defendants might attempt to remove.

It is true that courts sometimes have referred to § 1441(a) as "grant[ing] removal jurisdiction." *Watson v. Cartee*, 817 F.3d 299, 303 (6th Cir. 2016); *see also Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 7 (1983) (mentioning "the removal jurisdiction conferred by 28 U.S.C. § 1441"). And if § 1441(a) grants "removal jurisdiction," then § 1441(b)(2) narrows that jurisdiction, so it also is jurisdictional. This was the seemingly straightforward logic we followed in *Hurt* to hold that the forum-defendant rule was jurisdictional. *See* 963 F.2d at 1145.

"Removal jurisdiction," however, is something of a misnomer.[3] "[R]emoval is not a kind of jurisdiction," Wright, *supra*, § 3721, and "[t]he removal statute does not in itself create jurisdiction," *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999). Removal is a "statutory right," *Lewis v. Rego Co.*, 757 F.2d 66, 68 (3d Cir. 1985); *see also Little York Gold Washing & Water Co. v. Keyes*, 96 U.S. 199, 201 (1877), or "privilege," *Cont'l Cablevision of St. Paul, Inc. v. U.S. Postal Serv.*, 945 F.2d 1434, 1435 (8th Cir. 1991); *see also Chi., Rock Island & Pac. R.R. Co. v.*

---

[3]The only circumstances in which it might make sense to retain the term "removal jurisdiction" are those where "Congress enacted a grant of jurisdiction available only upon removal, rather than conferring a right to remove litigation that, by virtue of some other grant of jurisdiction, initially could have been filed in federal court." Wright, *supra*, § 3721; *see, e.g.*, *Johnson v. Showers*, 747 F.2d 1228, 1229 (8th Cir. 1984) ("Section 1442 itself grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction." (internal quotation marks omitted)).

*Stude*, 346 U.S. 574, 580 (1954). It gives certain defendants a choice of forum between two courts, each of which already has subject-matter jurisdiction over the type of action. It would conflate categories to treat a district court's separately granted subject-matter jurisdiction as dependent on a defendant's right to remove. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 574 (2004) (recognizing that unauthorized removal under § 1441(a) results in a "*statutory* defect" rather than a "*jurisdictional* defect").

Similarly, the forum-defendant rule is a "privilege," albeit one "granted to the plaintiff." *See Strother v. Union Pac. R.R. Co.*, 220 F. 731, 733 (W.D. Mo. 1915) (referring to the prohibition on removal now codified at 28 U.S.C. § 1445(a)). It exists to "preserve the plaintiff's choice of a (state) forum, under circumstances where it is arguably less urgent to provide a federal forum to prevent prejudice." *Hurley*, 222 F.3d at 380; *see also Hertz Corp. v. Friend*, 559 U.S. 77, 85 (2010) (identifying "diversity jurisdiction's basic rationale" as "opening the federal courts' doors to those who might otherwise suffer from local prejudice against out-of-state parties"). Like the right to remove in § 1441(a) itself, the forum-defendant rule, as a limitation on that right, is nonjurisdictional. *Cf. Carpenter v. Balt. & Ohio R.R. Co.*, 109 F.2d 375, 379-80 (6th Cir. 1940) (referring to the prohibition on removal now codified at 28 U.S.C. § 1445(a) as a "personal privilege" that "may be waived").

The location of § 1441 within the Judicial Code, Title 28 U.S.C., corroborates this nonjurisdictional understanding. *See Henderson*, 562 U.S. at 439 (considering a provision's placement within the session law in which it was enacted to determine if "Congress wanted that provision to be treated as having jurisdictional attributes"). In 1911, Congress organized under one title "many of the statutes defining and regulating the jurisdiction and procedure of the federal courts, including those regulating removals." *Williams v. N.Y., Phila. & Norfolk R.R. Co.*, 11 F.2d 363, 365 (4th Cir. 1926). In that enactment, Congress placed the provisions governing district-court "jurisdiction" in one chapter, *see* Act of Mar. 3, 1911, ch. 2, 36 Stat. 1087,

1091-94, while it placed the provisions governing "removal of causes" in another, *see id.*, ch. 3, 36 Stat. at 1094-99. In 1948, Congress recodified the Judicial Code. *See* 20 Charles Alan Wright & Mary Kay Kane, *Federal Practice & Procedure Deskbook* § 1 (2d ed. 2019). In doing so, Congress retained the separation of the provisions governing the "jurisdiction" of the district courts, *see* Act of June 25, 1948, ch. 85, 62 Stat. 869, 930-35, from the provisions governing the "removal of cases from state courts," *see id.*, ch. 89, 62 Stat. at 937-40. This organization remains the same today. The fact "Congress elected not to place" § 1441 in the chapter governing district-court jurisdiction is an additional "indication of Congress' intent" that the forum-defendant rule be nonjurisdictional. *See Henderson*, 562 U.S. at 439-40.

## B.

The statutory history of what is now § 1447(c) provides further support for the nonjurisdictional view. *See United States v. Wong Kim Ark*, 169 U.S. 649, 653-54 (1898) ("In construing any act of legislation . . . regard is to be had . . . to the history of the law as previously existing, and in the light of which the new act must be read and interpreted."); *BNSF Ry. Co. v. Loos*, 586 U.S. ---, 139 S. Ct. 893, 906 (2019) (Gorsuch, J., dissenting) (recognizing that "statutory history," unlike "unenacted legislative history," is "the sort of textual evidence everyone agrees can sometimes shed light on meaning").

The relevant predecessor to § 1447(c) first appeared in the 1948 recodification of the Judicial Code. Act of June 25, 1948, ch. 89, § 1447(e), 62 Stat. at 939; *see also* Act of May 24, 1949, ch. 139, § 84, 63 Stat. 89, 102 (moving this provision to § 1447(c) but otherwise leaving it unchanged). The provision required that "[i]f at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case." Act of June 25, 1948, ch. 89, § 1447(e), 62 Stat. at 939. "Although the statutory phrases 'removed improvidently' and 'without jurisdiction' were joined with the conjunction 'and,'

courts and commentators consistently interpreted the provisions in the disjunctive, thus establishing two independent grounds for remand." *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1254 n.7 (11th Cir. 1999) (collecting authorities); *see also Rothner v. City of Chicago*, 879 F.2d 1402, 1406 (7th Cir. 1989) (explaining why the phrases "must be read in the disjunctive").

The first ground, for "improvident" removals, applied to removals in which "one of the statutory, non-jurisdictional requirements for removal" was not satisfied. *In re Merrimack Mut. Fire Ins.*, 587 F.2d 642, 647 n.8 (5th Cir. 1978). One such statutory, nonjurisdictional requirement was the forum-defendant rule. *E.g.*, *In re Estate of Sellers*, 657 F. Supp. 168, 171 (W.D. Wash. 1987); *Schwarz v. Hosp. Corp. of Am.*, 636 F. Supp. 276, 278-79 (S.D. Fla. 1986); *Unanue v. Caribbean Canneries, Inc.*, 323 F. Supp. 63, 65-66 (D. Del. 1971).

Congress amended § 1447(c) in 1988. *See* Judicial Improvements and Access to Justice Act, Pub. L. No. 100-702, § 1016(c)(1), 102 Stat. 4642, 4670 (1988). It jettisoned the conjunctive phrase "removed improvidently and without jurisdiction," separated these removal defects more clearly into two distinct categories, and modified the time in which these defects could be raised as a basis for remand. *See id.* As amended, the statute required that a "defect in removal procedure" be raised within thirty days after the filing of the notice of removal, whereas it required that the action be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." *Id.*

Considering the effect of this amendment, courts concluded that "the 'removed improvidently' language of pre-1988 section 1447(c) was replaced, without intent to change the meaning, with the 'defect in removal procedure'" language. *See In re Medscope Marine Ltd.*, 972 F.2d 107, 109-10 (5th Cir. 1992). Thus, consistently with the pre-1988 view that violating the forum-defendant rule rendered removal improvident, courts post-1988 generally viewed such violations as a nonjurisdictional

-10-

"defect in removal procedure." *E.g.*, *Korea Exch. Bank, N.Y. Branch*, 66 F.3d at 50; *see also Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1544 (5th Cir. 1991) ("As used in [§ 1447(c)], a 'procedural' defect is any defect that does not go to the question of whether the case originally could have been brought in federal district court . . . .").

The "removal procedure" language, however, proved troublesome. *Snapper*, 171 F.3d at 1257-58. Some removals, after all, violated "substantive" removal provisions like the forum-defendant rule rather than "clearly . . . procedural" removal provisions like those found in § 1446. *See In re Shell Oil Co.*, 932 F.2d at 1522. This linguistic discordance, along with § 1447(c)'s dichotomy between "procedural" and "jurisdictional" defects, led us in 1992 to place the "substantive" forum-defendant rule on the jurisdictional side of the divide. *See Hurt*, 963 F.2d at 1146 n.1 (distinguishing a prior-panel precedent on the basis that the removal defect there was "procedural," unlike the "jurisdictional" defect at issue in *Hurt*); *Snapper*, 171 F.3d at 1258 (noting how, in *Hurt*, we refused to take "an expansive view of the term 'procedure'").

In 1996, Congress again amended § 1447(c). *See* An Act to Clarify the Rules Governing Removal of Cases to Federal Court, and for Other Purposes, Pub. L. No. 104-219, § 1, 110 Stat. 3022, 3022 (1996). Congress struck "any defect in removal procedure" and substituted in its place "any defect other than lack of subject matter jurisdiction." *Id.* "[B]y substituting 'defect other than lack of subject matter jurisdiction' for 'defect in removal procedure,' Congress sought to ensure that even the 'more substantive' removal defects, such as § 1441(b) violations, were subject to the 30-day time limit." *Lively*, 456 F.3d at 939; *see also* David D. Siegel, *Commentary on the 1996 Revision of Section 1447(c)* (West. Supp. 1996) (noting that this amendment clarified that the forum-defendant rule was not jurisdictional). Notably, in reaffirming *Hurt* in 2005, we did not address the 1996 amendment's significance. *See Horton*, 431 F.3d at 604-05 (quoting the "defect in removal procedure" language from the 1988 amendment before discussing *Hurt*).

In sum, the statutory history of § 1447(c) further demonstrates that Congress did not rank the forum-defendant rule as jurisdictional.

C.

Longstanding judicial understanding of the nature of the forum-defendant rule also is a relevant consideration in determining whether Congress intended for it to carry jurisdictional consequences. *See Henderson*, 562 U.S. at 436 ("When a long line of this Court's decisions left undisturbed by Congress has treated a . . . requirement as jurisdictional, we will presume that Congress intended to follow that course." (internal quotation marks and citations omitted)). If we were confronted with, say, "a century's worth of precedent and practice in American courts" treating the rule as jurisdictional, that jurisprudential tradition could be dispositive. *See Bowles v. Russell*, 551 U.S. 205, 209 n.2 (2007) (maintaining the view that the statutory timeframe in which a notice of appeal must be filed is jurisdictional given longstanding precedent and practice to that effect). However, while initially the rule was viewed as jurisdictional, since 1900 the nonjurisdictional view of the forum-defendant rule (and similar provisions governing removal) has predominated in American courts. Thus, the jurisprudential tradition relevant here bolsters the foregoing textual and contextual considerations.

Congress first enacted the forum-defendant rule in 1887. *See* Act of Mar. 3, 1887, ch. 373, § 1, 24 Stat. 552, 553; *see also* Act of Aug. 13, 1888, ch. 866, § 1, 25 Stat. 433, 434 (fixing typographical errors in the text of the rule but otherwise leaving it unchanged). The 1887 version provided that specified cases "may be removed into the circuit court of the United States for the proper district by the defendant or defendants therein being non-residents of that State." Act of Mar. 3, 1887, ch. 373, § 1, 24 Stat. at 553. At the time, the Supreme Court generally viewed the substantive "conditions" to removal as "indispensable" prerequisites. *See Gerling v. Balt. & Ohio*

-12-

*R.R. Co.*, 151 U.S. 673, 689 (1894); *cf. Ex parte Pa. Co.*, 137 U.S. 451, 454 (1890) (noting that the "general object" of the 1887 act was "to contract the jurisdiction of the federal courts").  Unsurprisingly, then, when a case removed in violation of the forum-defendant rule came before the Court during that period of time, the Court noted the violation, concluded summarily that the judgment below had to "be reversed for want of jurisdiction," and ordered the case remanded to state court. *Martin v. Snyder*, 148 U.S. 663, 663-64 (1893).

Less than a decade later, the Court abandoned this jurisdictional view of the substantive prerequisites to removal.  *See Baggs v. Martin*, 179 U.S. 206 (1900).  In *Baggs*, the plaintiffs brought a state-law claim in Colorado state court against a federal-court-appointed receiver, in his capacity as receiver, for a Colorado railroad. *Id.* at 207.  The receiver removed to federal court, asserting the right to remove due to the presence of a federal question (namely, his status as a federal-court-appointed receiver) and claiming the state action was "ancillary" to the federal action in which he had been appointed receiver.  *Id.*  The case proceeded to trial, and the plaintiffs prevailed.  *Id.* at 207-08.  The receiver appealed, and we certified two questions to the Supreme Court:  (1) whether the receiver had the right to remove the case; and (2) whether, even if not, the federal court "acquire[d] lawful jurisdiction" by virtue of the uncontested removal.  *Id.* at 208.  The Court expressed doubt that removal was permitted, but it declined to answer that question.[4]  *Id.*  Instead, it answered only the second question, finding that the federal court "plainly had jurisdiction" given the nature of the action (it was ancillary to the federal action) and holding that the (presumably) unauthorized removal did not vitiate or preclude the exercise of that subject-matter jurisdiction.  *Id.* at 209.

---

[4]A week later, the Court held that status as a federal-court-appointed receiver did not constitute a federal question triggering a right to remove.  *Gableman v. Peoria, Decatur & Evansville Ry. Co.*, 179 U.S. 335, 340 (1900).

The upshot of *Baggs* was that even "wholly unauthorized" removal did not pose a jurisdictional problem so long as the action could have been filed initially in federal court. *See* B.C. Moon, *The Removal of Causes from the Courts of the Several States to the Circuit Courts of the United States* 637 (1901). That is, if the federal court to which the case was removed had subject-matter jurisdiction over "a case of that character," it "could retain jurisdiction" even if there was "no fundamental right to remove." *Phila. & Bos. Face Brick Co. v. Warford*, 123 F. 843, 843-44 (C.C.D. Mass. 1902); *see also Toledo, St. Louis & W. R.R. Co. v. Perenchio*, 205 F. 472, 475 (7th Cir. 1913) (reading *Baggs* to mean that unauthorized removal did not amount to a jurisdictional defect "inasmuch as the subject-matter was within the lawful authority of the federal court to hear and decide").

The Sixth Circuit then applied this logic to violations of the forum-defendant rule. *See Handley-Mack Co. v. Godchaux Sugar Co.*, 2 F.2d 435 (6th Cir. 1924). In *Handley-Mack*, the court recognized that *Martin* "implied" that the rule was jurisdictional, but it found "no holding of the Supreme Court" to this effect. *Id.* at 437 (observing that *Martin* may have been an instance in which "the term 'jurisdiction' was used less strictly than it latterly has been"); *see also Bush v. United States*, 939 F.3d 839, 843 (7th Cir. 2019) ("The Justices have acknowledged that in earlier years they used the word 'jurisdiction' loosely . . . ."). It then looked to *Baggs* to reason that jurisdiction could "be retained where, as here, although the case was not technically removable under the statute, the court yet had jurisdiction over the subject-matter of the controversy, and the parties had fully consented to the federal jurisdiction and acted thereunder." *Handley-Mack*, 2 F.2d at 437. A few years later, the Second Circuit subscribed to this reasoning, concluding that *Baggs* "overruled" *Martin*. *Bailey v. Texas Co.*, 47 F.2d 153, 155 (2d Cir. 1931) (L. Hand, J.).

The Supreme Court lent credence to this view when it cited *Baggs* alongside *Bailey*, *Handley-Mack*, and *Perenchio* as support for the proposition that the absence of a "right to removal" does not pose a jurisdictional problem so long as the district

-14-

court "would have had original jurisdiction" over the removed action. *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 16 & n.14 (1951); *see also Woodward v. D.H. Overmyer Co.*, 428 F.2d 880, 883 (2d Cir. 1970) (noting that the *Finn* Court cited *Bailey* and *Handley-Mack* "with what could be regarded as approval and certainly was not disapproval"). By this point, the conventional wisdom was that *Baggs* had "displace[d]" *Martin*, meaning unauthorized removal was to be treated as a "[m]ere irregularity" that did not have jurisdictional consequences provided the action could have been brought originally in federal district court. *See Finn*, 341 U.S. at 19 & n.1 (Douglas, J., dissenting). The Court later made clear it agreed with this view when, in *Grubbs v. General Electric Credit Corp.*, it relied on *Baggs* (among other authorities) to conclude that, when an action is removed without statutory authorization to remove but removal goes unchallenged before the district court, the issue on appeal "is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court." 405 U.S. 699, 702 (1972).

As noted above, nine of our sister circuits have followed this logic and concluded that the forum-defendant rule is nonjurisdictional. *Accord Noethe v. Mann*, 27 F.2d 451, 452 (D. Minn. 1928). Additionally, outside of *Hurt* and *Horton*, we have done the same for comparable prohibitions on removal. For example, in 1910, Congress prohibited removal of Federal Employers' Liability Act suits brought in state court. *See* Act of Apr. 5, 1910, ch. 143, § 1, 36 Stat. 291, 291. Early on, we viewed this prohibition as nonjurisdictional. *Jacobson v. Chi., Milwaukee, St. Paul & Pac. R.R. Co.*, 66 F.2d 688, 693-94 (8th Cir. 1933). After Congress amended this provision and moved it to 28 U.S.C. § 1445(a), *see* Act of June 25, 1948, ch. 89, § 1445(a), 62 Stat. at 939, we held as much, *see In re Norfolk S. Ry. Co.*, 592 F.3d 907, 912 (8th Cir. 2010). Similarly, in 1958, Congress prescribed that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." Act of July 25, 1958, Pub. L. No. 85-554, § 5, 72 Stat. 415, 415 (codified at 28 U.S.C. § 1445(c)).

-15-

We also found this prohibition on removal to be nonjurisdictional. *See Bloom v. Metro Heart Grp. of St. Louis, Inc.*, 440 F.3d 1025, 1031 n.2 (8th Cir. 2006).

In short, over "a century's worth of precedent and practice in American courts," *see Bowles*, 551 U.S. at 209 n.2, including our own (*Hurt* and *Horton* aside), supports the nonjurisdictional view of the forum-defendant rule. This means that text, context, and precedent all militate in favor of that view. Accordingly, we hold that violating the forum-defendant rule results in a nonjurisdictional defect in removal, and we overrule *Hurt* and *Horton* to the extent they held to the contrary.

D.

Holbein raises a few points as to why we should stand by *Hurt*'s and *Horton*'s jurisdictional characterization of the forum-defendant rule. Alternatively, he argues that even if we overrule *Hurt* and *Horton* on this point and conclude the forum-defendant rule is a waivable defect in removal, we should not find he has waived his objection to removal based on the forum-defendant rule in this case. We are unpersuaded.

Holbein devotes the bulk of his response to TAW Enterprises' petition for rehearing *en banc* defending *Hurt* and *Horton* as correctly reasoned and decided. For the foregoing reasons, however, we disagree.

Holbein then suggests we are bound by *Martin* to treat the forum-defendant rule as jurisdictional because "*Baggs* is distinguishable." This is incorrect. As Judge Hand recognized nearly a century ago, insofar as *Martin* stands for the proposition that the absence of a right to remove leaves the district court without subject-matter jurisdiction over the removed action, *Baggs* overruled it by treating the absence of a right to remove as a nonjurisdictional defect. *See Bailey*, 47 F.2d at 155.

And again, the Supreme Court has reinforced *Baggs* in the 120 years since it was decided. *E.g.*, *Grubbs*, 405 U.S. at 702 (holding that unauthorized removal does not pose a jurisdictional problem so long as the district court would have had original jurisdiction over the action had it been filed there initially); *see also Caterpillar Inc. v. Lewis*, 519 U.S. 61, 70-78 (1996) (concluding that unauthorized removal does not require vacatur and remand to state court, presuming the district court had subject-matter jurisdiction to enter final judgment, even when the objection to removal is timely raised and properly preserved). Whatever lingering doubt remains about the status of *Martin* despite these decisions is dispelled by the fact the Court itself apparently has concluded *Martin* has no precedential force. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 90 n.6 (2005) (noting that the Court has not addressed whether the forum-defendant rule is jurisdictional while suggesting it agrees with the nonjurisdictional view); *cf. Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006) (instructing that "drive-by jurisdictional rulings," such as where a court dismisses a matter "for lack of jurisdiction" without explaining that disposition, "should be accorded no precedential effect on the question whether the federal court had authority to adjudicate the claim in suit" (internal quotation marks omitted)).

Holbein also asserts that this case is "ill-suited for the exercise of federal jurisdiction because it revolves entirely on the interpretation of Nebraska case law." Regardless, with rare exception, federal courts "have 'no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'" *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821)). Congress gave federal courts jurisdiction over this sort of action even though it involves only a state-law issue. *See* 28 U.S.C. §§ 1291, 1332(a). And it did not strip that jurisdiction through the forum-defendant rule. *See supra* Section II.A. Having jurisdiction here, we have a "virtually unflagging" obligation to exercise it. *See Sprint Commc'ns*, 571 U.S. at 77; *Cohens*, 19 U.S. (6 Wheat.) at 404 (stating that to do otherwise would be "treason to the constitution").

Alternatively, Holbein argues that, even if violation of the forum-defendant rule is a waivable, nonjurisdictional defect, waiver occurs only after "the parties litigated through a trial." For this point, he relies on the *Grubbs* Court's observation that objections to removal based on nonjurisdictional defects are waived when, after removal, the case is "*tried on the merits* without objection and the federal court enters judgment." *See* 405 U.S. at 702 (emphasis added). Here, there was no trial because the district court dismissed the action. Thus, according to Holbein, there is no waiver.

Holbein reads too much into the *Grubbs* Court's use of the word "tried." *See, e.g.*, *Kruse v. Hawai'i*, 68 F.3d 331, 334 (9th Cir. 1995) (permitting waiver after summary judgment); *Johnson v. Odeco Oil & Gas Co.*, 864 F.2d 40, 42 (5th Cir. 1989) (finding waiver where the plaintiff "participates in the conduct" of the action post-removal, such as by amending the complaint and participating in discovery); *Farm Constr. Servs., Inc. v. Fudge*, 831 F.2d 18, 19, 22 (1st Cir. 1987) (per curiam) (finding waiver after dismissal). At any rate, since 1996, § 1447(c) has required that a plaintiff raise "any defect other than lack of subject matter jurisdiction" within "30 days after the filing of the notice of removal." Otherwise, the opportunity for remand on such grounds is waived. *See Bloom*, 440 F.3d at 1031 n.2. Having the action "tried" is no longer a prerequisite (if it ever was) to finding waiver of an objection to removal based on the forum-defendant rule.

Relatedly, Holbein claims that finding waiver here "would be particularly unfair given the state of the law when this case began." The only way to avoid finding waiver under § 1447(c) in this case is to apply today's holding strictly prospectively. But "the normal rule in civil cases" is "full retroactivity." *Bottineau Farmers Elevator v. Woodward-Clyde Consultants*, 963 F.2d 1064, 1075 (8th Cir. 1992). Even assuming we have discretion to depart from this rule in cases where retroactivity risks "grave disruption or inequity," *Ryder v. United States*, 515 U.S. 177, 184-85 (1995); *accord Nat'l Fuel Gas Supply Corp. v. FERC*, 59 F.3d 1281, 1288 (D.C. Cir. 1995), we find no grave inequity here warranting such a departure.

When Holbein for the first time doubted the existence of jurisdiction at oral argument before the panel, his counsel was quick to note that Holbein did not contest jurisdiction because he just wanted "to have [his] case heard." We do not think it particularly unfair to grant Holbein's request by following the normal rule of retroactivity, finding he waived his objection to removal per § 1447(c), and proceeding to the merits.

## III.

Accordingly, we proceed to the merits of the district court's dismissal of Holbein's first cause of action for retaliatory demotion and discharge in contravention of public policy. We review *de novo* both the district court's dismissal for failure to state a claim, *Birchansky v. Clabaugh*, 955 F.3d 751, 755 (8th Cir. 2020), and its interpretation of state law, *Boudoin v. Harsson*, 962 F.3d 1034, 1044 (8th Cir. 2020). "Because this is a diversity action, we apply the substantive law of the forum state, here Nebraska." *Ackerman v. U-Park, Inc.*, 951 F.3d 929, 933 (8th Cir. 2020). "[W]e are bound by the decisions of the Nebraska Supreme Court, and, where it has not spoken, we must predict how it would rule." *E3 Biofuels, LLC v. Biothane, LLC*, 781 F.3d 972, 976 (8th Cir. 2015). "In making our prediction, we may consider relevant state precedent, analogous decisions, considered dicta, scholarly works and any other reliable data." *Ventura v. Titan Sports, Inc.*, 65 F.3d 725, 729 (8th Cir. 1995). We "may pay particular attention to sources cited approvingly by the state's highest court." *Butler v. Balolia*, 736 F.3d 609, 613 (1st Cir. 2013).

The district court concluded that Holbein's first cause of action "fail[ed] as a matter of law." *Holbein*, 2018 WL 9538221, at *3. We agree.

The district court found that Holbein was an at-will employee, *id.*, and Holbein does not challenge that finding on appeal. In Nebraska, ordinarily, "an employer, without incurring liability, may terminate an at-will employee at any time with or

without reason." *Trosper v. Bag 'N Save*, 734 N.W.2d 704, 706-07 (Neb. 2007). The Nebraska Supreme Court has recognized an exception to this rule when an employee's firing violates "a very clear mandate of public policy." *Ambroz v. Cornhusker Square Ltd.*, 416 N.W.2d 510, 515 (Neb. 1987). And it has extended this exception to demotions. *Trosper*, 734 N.W.2d at 706. Thus, a person may state a claim for wrongful demotion or discharge "when the motivation" for either type of action "contravenes public policy." *See id.* at 707. Such claims, however, are to "be limited to manageable and clear standards." *Ambroz*, 416 N.W.2d at 515; *see also O'Brien v. Bellevue Pub. Schs.*, 856 N.W.2d 731, 740 (Neb. 2014) (reiterating this point). For this reason, the alleged public policy violated must be "very clear." *Ambroz*, 416 N.W.2d at 515.

We accept the factual allegations in Holbein's complaint as true and construe them in the light most favorable to him. *See Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020). Holbein alleges TAW Enterprises demoted and constructively discharged him because he: informed TAW Enterprises about his colleague's allegedly criminal misconduct in attempting to cover up the loss of customer financial information, *see generally* 15 U.S.C. §§ 6821(a)(2), 6823(a); advocated for that colleague's termination; "attempted to advise" TAW Enterprises of its unfulfilled obligations under applicable provisions of the Act, *see generally* 15 U.S.C. §§ 6801-09, 6821-27, and those provisions' implementing regulations, *see generally* 16 C.F.R. § 313; and reported to TAW Enterprises ongoing noncompliance in the workplace with those provisions and their implementing regulations. In short, Holbein alleges he was demoted and constructively discharged because he was an internal whistleblower about compliance issues with federal law at TAW Enterprises.

To be clear, Holbein does not allege that these provisions of federal law imposed on him a mandatory reporting duty that he was fired for fulfilling or protected him from discharge for this sort of internal whistleblowing. And he has not called our attention to any portion of the applicable provisions of the Act or those

-20-

provisions' implementing regulations that impose such a duty or contain such a protection. *See generally* 15 U.S.C. §§ 6801-09, 6821-27; 16 C.F.R. § 313; *cf. Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d 956, 960 (8th Cir. 2007) ("No private right of action exists for an alleged violation of the [Act]."). Holbein's claim simply is that these provisions of federal law embody a public policy of protecting confidential customer financial information, Holbein acted consistently with this public policy by his internal reporting, and TAW Enterprises contravened this public policy by demoting and constructively discharging him for his actions.

It seems the Nebraska Supreme Court has not yet decided whether to extend the public-policy exception to these circumstances. *See O'Brien*, 856 N.W.2d at 741 (recognizing that the plaintiff in that case raised this question in similar circumstances but opting to affirm on alternative grounds without deciding whether to extend the exception). In arguing the Nebraska Supreme Court effectively has extended the public-policy exception to these circumstances, Holbein relies heavily on *Schriner v. Meginnis Ford Co.*, in which that court held that the exception would apply to protect an employee fired for reporting in good faith his employer's suspected criminal behavior externally to the proper law-enforcement officials. 421 N.W.2d 755, 757-59 (Neb. 1988). The *Schriner* court indicated, however, that its decision turned on the "appropriate facts" of that case, *id.* at 759, which differ from the facts at hand, *see Rastede v. Bright Horizons Res. for Survivors of Domestic Violence and Sexual Assault, Inc.*, Nos. A-04-191, A-04-192, 2005 WL 2206037, at *1, *6 (Neb. Ct. App. Sept. 13, 2005) (declining to extend *Schriner* to situation where employee internally reported her direct supervisor's allegedly unlawful conduct).

Therefore, we must predict how the Nebraska Supreme Court would decide this case. To this end, we find the analysis in *Wendeln v. The Beatrice Manor, Inc.*, 712 N.W.2d 226 (Neb. 2006), instructive. In *Wendeln*, a certified nursing assistant claimed her discharge contravened public policy because she was fired for filing a statutorily mandated report with the state department of health and human services.

-21-

*Id.* at 232-33, 236. "[A]gree[ing] with the reasoning" in a Wisconsin Supreme Court decision, the *Wendeln* court held that the public-policy exception applied in such circumstances. *Id.* at 239-40 (referencing *Hausman v. St. Croix Care Ctr.*, 571 N.W.2d 393 (Wis. 1997)). In endorsing the *Hausman* court's reasoning, however, the *Wendeln* court suggested it approved of the line the Wisconsin Supreme Court drew between "'praiseworthy conduct consistent with public policy'" that does not fall under the public-policy exception and conduct going "well beyond 'merely praiseworthy conduct'" that does. *Id.* at 239 (quoting *Hausman*, 571 N.W.2d at 397-98); *see also Ludlow v. BNSF Ry. Co.*, No. 4:12CV3113, 2013 WL 3872930, at *23 (D. Neb. July 24, 2013) ("[I]n *Wendeln* the Nebraska Supreme Court expressed approval of Wisconsin's more narrow rule that employees are not protected from discharge for 'merely engaging in praiseworthy conduct consistent with public policy.'" (quoting *Wendeln*, 712 N.W.2d at 239)).

Although it does not appear that the Nebraska Supreme Court has fleshed out further what it considers "merely praiseworthy conduct," the Wisconsin Supreme Court has. Because the Nebraska Supreme Court has endorsed this principle recognized by that court, we consider what the Wisconsin Supreme Court has held to be "merely praiseworthy conduct" not protected under the exception. *See Butler*, 736 F.3d at 613 ("In fashioning [an *Erie*] prediction, the federal court should consult the types of sources that the state's highest court would be apt to consult . . . .").

For our purposes, we find *Bushko v. Miller Brewing Co.*, 396 N.W.2d 167 (Wis. 1986), particularly insightful. There, an employee voluntarily reported internally his concerns about his employer's allegedly unlawful safety practices, his employer's hazardous-waste-disposal procedures, and "dishonest conduct" by some of his colleagues involving "falsification of personnel and expense records." *Id.* at 168-69. After being fired, he sued his employer, asserting wrongful discharge in contravention of public policy by alleging that his firing was motivated by his internal reporting of these issues. *Id.* The state court of appeals held that these facts fell

-22-

under the public-policy exception, but the Wisconsin Supreme Court reversed, reasoning that "if the employee of his own volition" reports these sorts of concerns "consistently with public policy," he engages in "merely 'praiseworthy' conduct" and is not protected from discharge by the exception. *Id.* at 169-70, 172.

The facts in *Bushko* are similar to the facts in this case. Holbein, "of his own volition" and "consistently with public policy," reported internally a colleague's alleged criminal misconduct as well as other issues of noncompliance with federal law in the workplace. *See Bushko*, 396 N.W.2d at 170. Certainly, as alleged, his conduct was "praiseworthy." *See id.* at 171. But Nebraska's public-policy exception does not protect Holbein from demotion and discharge "for 'merely engaging in praiseworthy conduct consistent with public policy.'" *See Wendeln*, 712 N.W.2d at 239 (quoting *Hausman*, 571 N.W.2d at 397); *see also Gomez v. Cargill, Inc.*, No. 4:06CV3191, 2006 WL 3257184, at \*1-2, \*1 n.1 (D. Neb. Nov. 9, 2006) (concluding that the Nebraska Supreme Court would not extend the exception to protect an employee of a beef slaughter facility from being fired for "making health and safety complaints to his supervisors" concerning "dangerous conditions" in the workplace that violated state criminal law). Mindful of the Nebraska Supreme Court's admonition that the public-policy exception is to be "limited to manageable and clear standards" and should be applied only in the face of "a very clear mandate of public policy" so dictating, *see Ambroz*, 416 N.W.2d at 515, we conclude the Nebraska Supreme Court would not extend the exception to the facts alleged in this case. Therefore, the district court correctly held that Holbein failed to state a claim as a matter of law under Nebraska's public-policy exception. *See Holbein*, 2018 WL 9538221, at \*3-4.

## IV.

For the foregoing reasons, we overrule our decisions in *Hurt* and *Horton* to the extent they held that the forum-defendant rule is a jurisdictional defect in removal.

We also conclude that Holbein failed to state a claim as a matter of law for retaliatory demotion and discharge in contravention of public policy under Nebraska law. Thus, we affirm the judgment of the district court dismissing Holbein's complaint with prejudice.

_____